(A.R.D. 121)

RICO, INC. *v.* UNITED STATES

Entry No. 14133.

Second Division, Appellate Term

(Decided April 11, 1960)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellant.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an application for review of a decision and judgment sustaining the appraised value of an importation of whole frozen strawberries packed in 27- and 29-pound tins, 41 Cust. Ct. 543, Reap. Dec. 9224.

The merchandise in issue was appraised on the basis of export value of similar merchandise at Mexican pesos 2.75 per pound, less non-dutiable charges equal to 18.36 per centum. It was entered at 13 cents per pound, f.o.b. Leon, Guanajuato, Mexico, nondutiable charges included, but is claimed to be properly valued at Mexican pesos 1.625 per pound, based upon statutory cost of production.

Export value is defined in section 402 of the Tariff Act of 1930 as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the

United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It appears from the record that the subject frozen strawberries were produced by the Mexican firm of Empacadora Mexicana, S. A., of Leon, Gto., Mexico. In the course of processing, whole strawberries are stemmed, washed, culled, graded, packed in tins, with 20 per centum sugar added, and then frozen. The entire production of Empacadora Mexicana was sold to appellant during the years 1954 and 1955, in particular.

It further appears that 7 or 8 other Mexican firms produce frozen strawberries which are similarly processed, but are always packed in 30-pound tins. For the purposes of this review, counsel for appellant has conceded that frozen strawberries produced by the Mexican firms of H. K. N. Packing Co. and La Fortaleza are "similar merchandise" within the contemplation of section 402(d), *supra*, to the frozen strawberries packed in 27- and 29-pound tins here involved.

Before the trial judge, it was also conceded that there was neither a foreign nor an export value for such merchandise produced by Empacadora Mexicana, S.A.; that there was no foreign value for similar merchandise; and that the merchandise in issue was appraised upon the basis of export value for similar merchandise. Appellant, however, specifically reserved the right to question the existence of export value for similar merchandise, it being contended that there is neither foreign value, export value, nor United States value for such or similar merchandise, and that cost of production is the proper basis of appraisement.

The record establishes that frozen strawberries, packed in tins of the sizes here involved, are offered for sale and sold, both in Mexico for exportation to the United States, and in the United States, only to the so-called institutional or manufacturing trades, such as the bakery and ice cream industries and processors and preservers. Although it is shown that retail grocers purchase and sell whole frozen strawberries in packages weighing 10 or 12 ounces or 1 pound, it does not appear that they purchase such merchandise in the large tins produced for the institutional trade.

It is this circumstance upon which appellant principally relies in support of the contention that similar merchandise is not freely offered for sale to all purchasers within the contemplation of the definition of export value. The argument is made that it is merchandise, not packing, which is the subject of appraisement, citing the cases of *United States* v. *Arkell Safety Bag Co.*, 22 C.C.P.A.

(Customs) 258, T.D. 47210, and *United States* v. *F. W. Woolworth Co. et al.*, 22 C.C.P.A. (Customs) 184, T.D. 47126, and since it has been shown that frozen strawberries merchandised by the retail trade do not differ from strawberries consumed by processors, the failure of Mexican manufacturers to offer their wares to the former category of purchasers constitutes a restriction which negatives a free offering to all purchasers. It is said that where merchandise is so packed as to make it undesirable for a particular class of purchasers to seek to buy it, those purchasers are, in effect, precluded from that market, and, hence, the free and open competition requisite for a finding of statutory export value simply does not exist.

We regard this theory as untenable. It is not to be supposed that before an export value can be found for any imported article it must be shown that the manufacturer has, by fashioning and packaging, made his merchandise attractive and useful to every member of the buying public. The statute looks to the ordinary course of trade, and whether or not in that trade such or similar merchandise is freely offered for sale to all purchasers. As observed by the trial court, the expression "all purchasers," as defined in the case of *United States* v. *American Glanzstoff Corp.*, 24 C.C.P.A. (Customs) 35, T.D. 48308, means "all of those who cared to buy such goods in such markets." If in the ordinary course of trade one, or another category of purchasers, is not in the market for a particular product, in the form in which it is offered for sale by its manufacturer, it would seem to be immaterial that the manufacturer did not solicit that group of buyers, or that that group of buyers might be likely to purchase the product if differently packaged.

While the cases cited by appellant are indeed authority for the proposition "that it is merchandise which is appraised, not packing," that principle has no particular bearing on the issue in this case. The merchandise was in fact appraised at its per pound value, and the issue of its similarity to frozen strawberries exported by other producers was not made to depend upon its special type of packaging.

Packaging is alleged to be relevant here in the determination of the question of whether concededly similar merchandise was freely offered for sale to all purchasers. It is in this connection that we deem the matter irrelevant. If a manufacturer selects a type of package which makes his merchandise suitable for one trade and not for another, the statutory language "freely offered for sale to all purchasers" is not infringed, and that action alone does not constitute a refusal to sell to all purchasers. If, on the contrary, by reason of category, location, responsibility, or other circumstance, the manufacturer does not make his product as packaged available to all purchasers, in the usual wholesale quantities and in the ordinary course

of trade, then he has imposed restrictions which operate to negative free offerings to all purchasers.

The instant record does not disclose any situation covered by the latter hypothesis. No instance has been cited of a retail grocer's having been rejected as a purchaser of frozen strawberries produced by any of the Mexican companies alluded to in the record. No evidence has been submitted to show that any retail grocer ever sought this merchandise in the condition in which it was usually bought and sold. In fact, it is apparent from appellant's theory in this case that the retail grocery trade was not ever a class of potential buyers of frozen strawberries, packed in 30-pound tins. Hence, as to them, the market was not restricted.

It is asserted, alternatively, that if a restricted market did not result from the absence of sales to the retail grocery trade, it did result from the Mexican manufacturers' refusal to freely offer their frozen strawberries to persons who did care to buy such goods in the principal markets of Mexico for exportation to the United States. Specifically, it is alleged that the importer, and the firm of Henry Broch & Co., food brokers who acted as appellant's exclusive agents in the sale of frozen strawberries in the United States, were potential purchasers of Mexican frozen strawberries, packed in 30-pound tins, to whom such merchandise was not freely offered for sale.

Insofar as the importer is concerned, its president testified that he never received an offer from any of the Mexican packers of frozen strawberries in 1955, the year of the subject importation; that none of those packers sold any frozen strawberries to his company in that year; that he did not buy frozen strawberries from anyone other than the exporter in this case during 1955; that, in 1954, he purchased 80 per centum of the production of a Mexican company, named Refrigeradora del Valle; and that no other producer offered him frozen strawberries in 1954 or 1955.

We are in agreement with the trial judge's conclusion that this evidence is "very vague and indefinite." The importer has not set forth any specific instance of a denial of its bid for the purchase of strawberries in Mexico. Nor is there evidence to indicate whether such bids as it might have made comported with the quantities normally sold by other producers, or whether terms and conditions of its requests to purchase were, or were not, in the ordinary course of trade. Certainly, the witness' statement that his transaction with Refrigeradora del Valle involved the purchase of 80 per centum of its output might well create the inference that the importer was not a purchaser in the ordinary course of trade, but rather a preemptive buyer seeking exclusive purchasing rights.

The evidence relating to the business practices of the firms of H. K. N. Packing Co. and La Fortaleza (Treasury agent's reports received

in evidence as defendant's exhibits C and E, D, and F, respectively) reveals that neither company was accustomed to issuing pricelists. Their methods of contacting customers and of soliciting sales are not disclosed. Under these circumstances, very little significance attaches to the testimony that no other producer offered the importer frozen strawberries during the years of 1954 and 1955. We do not construe the expression "freely offered for sale to all purchasers" as requiring a seller actively to seek out and sell to all potential buyers. Its intendment is fulfilled when every *bona fide* purchaser of the usual wholesale quantities in the ordinary course of trade has a like opportunity to buy under equal terms and conditions. The contrary has not been affirmatively shown as respects the instant importer.

The same considerations tend to characterize the evidence given by the witness Broch in respect to the efforts of his company to purchase frozen strawberries in Mexico for exportation to the United States. Although he stated that his firm consistently wrote for offers from the seven or eight Mexican companies engaged in this business and that he was "always trying to solicit accounts for sales," he could not recall the name of any individual concern to whom a letter had been addressed. Neither did he set forth the terms and conditions of any of his requests to purchase frozen strawberries, except as they involved solicitation of accounts for sales.

We are of opinion that the trial court quite properly concluded from the testimony of this witness that his company "was soliciting accounts to use his brokerage services rather than offers to sell strawberries" and that the evidence on the point "falls far short of establishing that strawberries similar to those at bar were not freely offered to all purchasers."

As an additional argument that similar frozen strawberries were not freely offered to all purchasers for exportation to the United States, counsel for appellant urges that the evidence (defendant's exhibit C) shows that the importation of frozen strawberries into the United States is contingent upon obtaining a certificate of inspection from the United States Department of Agriculture. Counsel evidently has very little faith in this argument, for it is said, "It is true that this is not a restriction which is imposed by the shipper, but we believe it is a contingency which prevents the strawberries from being 'freely offered' to importers in the United States."

No extended discussion of this point is necessary as it is quite clear that the requirements of the Department of Agriculture condition the acceptance, not the offer of this merchandise. Since the language of the statute characterizes the offer, not the acceptance, conditions upon acceptances do not operate as restrictions upon offers. Moreover, since market value may be determined from offers of sale which are never consummated, if they be freely made to all purchasers in the

usual wholesale quantities and in the ordinary course of trade, it is obvious that contingencies which may arise to vitiate executed transactions of sale are not restrictions upon such offers. *White Lamb Finlay, Inc.* v. *United States*, 29 C.C.P.A. (Customs) 199, C.A.D. 192.

Counsel's final argument against the existence of an export value for the merchandise at bar rests upon the contention that all sales of Mexican frozen strawberries were made to the institutional or processing trade, who are consumers, and do not purchase for resale. It is urged that sales to consumers are not wholesale sales, and may not, therefore, be considered in determining usual wholesale quantities.

The law is well settled that the definition of export value "does not provide that the wholesale price shall be the price *to wholesalers,* but the price in the usual *wholesale quantities.* The law is not concerned with the persons who buy, but the manner in which they buy." [Italics quoted.] *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T.D. 44216. It is equally well settled that sales to consumers, if made in wholesale quantities, may be considered in determining usual wholesale quantities from the price of which foreign and export values are determined. *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T.D. 38747; *United States* v. *A. S. Neuberger and American Glanzstoff Corp.*, 19 C.C.P.A. (Customs) 96, T.D. 45241; *American Shipping Co. (General Electric X-Ray Corp.)* v. *United States*, 29 C.C.P.A. (Customs) 250, C.A.D. 198.

The instant record does not establish what are wholesale quantities in the frozen strawberry trade, either in Mexico or in the United States, although there is ample evidence that sales are usually made in carload lots of 60,000 pounds. However, the appraiser has found an export value for similar merchandise, and his action is presumptively correct. 26 U.S.C. section 2633. Inherent in that presumption is the corollary that he has found the existence of every fact necessary to sustain his action. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C.C.P.A. (Customs) 146, C.A.D. 75. Consequently, and in the absence of evidence to the contrary, it must be presumed that sales were made in wholesale quantities, and the burden rested with appellant to prove otherwise. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495. This it has failed to do, and it may not merely rely upon sales to consumers as negativing sales in wholesale quantities.

Since, despite the record showing that all sales by both H. K. N. Packing Co. and La Fortaleza were made at $0.22 per pound f.o.b. Laredo, counsel for appellant, in oral argument conceded the equivalence of that price with the appraised value of Mexican pesos 2.75 per pound, less nondutiable charges as stated, no issue has been here created by that difference.

Based upon the foregoing considerations, the court finds:

1. That the merchandise involved in this application for review consists of whole frozen strawberries, packed in 27- and 29-pound tins, exported from Mexico on or about May 19, 1955.

2. That said merchandise was appraised on the basis of export value of similar merchandise, as that value is defined in section 402(d) of the Tariff Act of 1930, at Mexican pesos 2.75 per pound, less nondutiable charges equal to 18.36 per centum

3. That the appellant, importer of said merchandise, purchased the entire output of the Mexican producer thereof during the year 1955.

4. That, at or about the time of exportation, neither such nor similar merchandise was offered for sale in Mexico for home consumption.

5. That plaintiff has failed to establish that, at the time of exportation, similar merchandise was not freely offered for sale to all purchasers in the usual wholesale quantities, and in the ordinary course of trade, in the principal markets of Mexico, for exportation to the United States.

The court, therefore, concludes:

1. That the statutory presumption of correctness of the appraiser's finding of value has not been overcome.

2. That, by operation of said presumption, export value, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise at bar.

3. That such value is as returned by the appraiser.

4. That the decision and judgment of the trial court should be affirmed.

Judgment will be entered accordingly.