(A.R.D. 125)

UNITED STATES *v.* NATIONAL CARLOADING CORP.

Entry Nos. 765674-1/2; 813232; 787005.

Second Division, Appellate Term

(Decided February 20, 1961)

*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the appellant.

*Lawrence & Tuttle*; *Barnes, Richardson & Colburn* (*Hadley S. King* and *Edward N. Glad* of counsel) associate counsel; for the appellee.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: This is an application for review of a decision and judgment of a single judge sitting in reappraisement, sustaining the claim of appellee that the export value of certain imported Japanese plywood was $69.56 per thousand square feet, net, packed. The decision relates to three cases, consolidated for purposes of trial, and is reported in 43 Cust. Ct. 531, Reap. Dec. 9535.

It is not disputed that export value, as that value is defined in section 402(d) of the Tariff Act of 1930,[1] is the proper basis for determining the value of the merchandise at bar. Appellant contends, however, that the evidence of record is insufficient to overcome the presumption of correctness attaching to the appraiser's return of values, which were $75.50 per thousand square feet, net, packed, for the shipments involved in R58/12630 and R58/12631, and $77 per thousand square feet, net, packed, for the shipment involved in R58/13655. It is, therefore, urged that the trial court erred in sustaining appellee's claimed values.

In view of the position taken by appellant in this case, it is deemed advisable to enter upon a somewhat detailed analysis of the evidence adduced by the parties before the trial judge.

The record establishes that the subject merchandise consists of rotary V-grooved lauan plywood of sizes 48 by 96 inches by one-fourth of an inch, manufactured by Nakamura Plywood Co. of Nagoya, Japan, and exported from Japan during the latter half of 1956. The ultimate consignee and actual purchaser of the merchandise was Pacific Wood Products Co.

An affidavit of Hiromitsu Ito, the managing director of Nakamura Plywood Co., received in evidence as plaintiff's collective exhibit 1 (original and duplicate original), recites that the affiant, in his capacity of managing director, was in charge of all domestic and overseas export sales of his company. He stated that plywood made of lauan Philippine mahogany was "freely offered to anyone who cared to buy for export to the United States," at prices which included packing costs and freight, and handling charges to the point of shipment, and that the prices did not vary by reason of quantity purchased. He further stated that, during the latter half of 1956, his company "freely offered and sold" three qualities of Rotary Lauan V-Grooved Plywood, at stated prices per thousand square feet, and that a blend of the three qualities, composed of 37½ percent of first quality, 37½ percent second quality, and 25 percent third quality was "freely offered * * * to anyone who cared to purchase or export to the United States at $69.56 per thousand square feet."

The affidavit further reveals that, although in 1956 the Japanese Government instituted an export quota and license system controlling the purchase of plywood for exportation, his company was not con-

---

[1] Section 402(d), Tariff Act of 1930, reads as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

cerned with the matter as it was the buyer's responsibility to secure his own export license.

Ito's affidavit concludes with the following statement:

That during the periods mentioned our merchandise was offered and sold to American importers and to firms in Japan with the definite restriction that said merchandise would not be resold for consumption in Japan. It was offered and sold only on the condition that it would be exported.

Appellee also introduced, as plaintiff's exhibit 2, an affidavit of Peter Okada, vice president of Pacific Wood Products Co. in charge of its Far Eastern Division. This affiant stated that he is responsible for the operations of his company's Tokyo office and acts as purchasing agent in buying plywood in Japan. As a consequence, he is familiar with sales practices in connection with plywood transactions.

It appears from Okada's affidavit that the Japanese mills which manufacture plywood are not affected by the quota-licensing regulations set up by the Japanese Government. It is the purchaser who must comply with its requirements, and those who do not have a quota allowance must purchase either from mills or from jobbers, known as trading houses, having such allowances. Since, however, Pacific Wood Products Co. possessed its own quota allowance, it was able to purchase directly from the mills.

Okada further stated that he has made purchases of Rotary Lauan V-Grooved Plywood of a blend consisting of 37½ percent first quality, 37½ percent second quality, and 25 percent third quality from Nakamura Plywood Co. at $69.56 per thousand square feet, and "that this was the freely offered price of such a blend of this plywood made by that mill and further that this freely offered price remained constant for the remainder of 1956."

This affiant then explained that although the purchase price was $69.56 per thousand square feet, it was the practice of his home office to remit an additional 1 percent as a buying commission to cover the expenses of maintaining the Japanese office. As a result, the invoices for plywood purchased from Nakamura Plywood Co., prepared by him, showed a price of $70.26 per thousand square feet.

Jack Davidson, executive vice president of Pacific Wood Products Co., testified orally on behalf of appellee. It appears from his testimony that he has had considerable experience in the importation and distribution of plywood in the United States and that, since his association with Pacific Wood Products Co. in 1955, he has made three trips to Japan, each trip averaging 6 weeks to 2 months. On those occasions, he discussed market conditions for plywood with the manufacturers, both from the point of view of availability of the products and from the point of view of prices and sales policies, and, during the spring of 1956, he negotiated for the purchase of the merchandise

at bar. He did not, however, recall whether he had actually placed the order for these shipments. He also discussed prices with his competitors to ascertain whether or not they were obtaining plywood from Nakamura Plywood Co. at higher or lower quotations. As far as came to his attention, that company did not sell to others at different prices, nor did he hear of their refusing to sell to anyone. However, he did not know whether any of the manufacturers with whom he dealt had, in fact, ever refused to sell plywood to any customer for exportation to the United States.

In addition, this witness testified that the Los Angeles and Tokyo offices of Pacific Wood Products Co. are in daily cable and teletype communications with each other. The Tokyo office transmits to Los Angeles offerings which are received from the mills. These are accepted or rejected by cable. If accepted, purchase orders (plaintiff's exhibits 3, 5, 7) are forwarded to the Tokyo office, which, in turn, sends back written confirmations (plaintiff's exhibits 4, 6, 8). Whenever any Japanese mill is not equipped to handle its own exports and prepare its own invoices and shipping documents, the Tokyo office of his company performs those services. This was the case with respect to the instant importations.

For the defendant, there were received in evidence two reports of investigations into the Japanese plywood market conducted by Lester D. Johnson, appraiser of merchandise, investigating plywood in Tokyo, Japan. Defendant's exhibit A relates specifically to the operations of Nakamura Plywood Manufacturing Co. and is based on information supplied by its president, its manager, and its export manager (S. Ito) during February and March 1955. As of that time, according to the report, plywood of the type sold for exportation to the United States was never offered or sold for home consumption in Japan; over 98 percent of all sales made by this company were to exporters for exportation to the United States or other countries; and, although the company has on rare occasions sold plywood in small quantities for direct export to the United States, it has never freely offered its merchandise.

Defendant's exhibit B is the report of an investigation into the Japanese plywood trade generally. It is dated March 25, 1955, and it, too, was submitted by Lester D. Johnson. Significant to this proceeding are the following remarks:

While some manufacturers have sold their merchandise for direct export, these instances are exceptional and are stated by the Japan Plywood Exporters Association to constitute less than 20% of the total sales. The ordinary course of trade is for manufacturers to sell to exporters on an FOB shipping port basis. The exporters in turn sell to importers in the United States on the same basis or on a C&F or CIF basis depending on the desires of the importer. The exporters add as their profit a percentage over cost depending on market condi-

tions, usually not less than 2% and frequently considerably more. Most exporters would prefer to sell on an FOB basis but accede to the wishes of importers who prefer other terms. Generally speaking, the prices of these manufacturers who do sell directly are maintained at about the same level as the prices quoted by exporters. There are no formal agreements to this effect but it is a well understood and accepted trade practice. The same practices are followed with respect to sales to third countries.

Usually prices are quoted by exporters as well as manufacturers on a take-it or leave-it basis and bargaining is the exception rather than the rule. This is due to the sellers market which has existed in this industry for the past several years. Demand has normally exceeded available supply and most plants have operated at or near capacity. A limiting factor on production has been the availability of lauan logs of plywood quality from the Philippines.

The trial judge was of opinion that the evidence in this case was sufficient to overcome the statutory presumption of correctness attaching to the appraiser's return of values (28 U.S.C. § 2633) and to justify sustaining the values claimed by the importer. He based his conclusion on the following essential grounds:

(1) That owing to Ito's personal knowledge as export manager of Nakamura Plywood Co. of its sales practices, he was competent and qualified to state by way of evidentiary proof that the prices of plywood offered for sale and sold by his company did not vary with the quantities sold; that such merchandise was freely offered for sale to all purchasers; and that no restrictions accompanied either offers or sales.

(2) That "certain of the statements made by Ito in his affidavit, [were] corroborated or supported by the evidence (excluding unwarranted opinions and conclusions contained therein) offered by the defendant."

Commenting upon the above-quoted excerpt from defendant's exhibit B, the trial court stated:

The first sentence of the foregoing excerpt shows that sales to others than exporters or trading houses were, in fact, made, and that they constituted a substantial and not "exceptional" (i.e., less than one-fifth but presumably more than one-sixth) part of total sales. The sentences which follow contain a conclusion directly at variance with the facts stated in the first sentence, i.e., that "The ordinary course of trade is for manufacturers to sell to exporters," etc. The only proper conclusion that can be drawn from the first sentence is that the ordinary course of trade was for manufacturers to sell *both* to exporters and for direct export (i.e., to American importers). The *result* of the offers and sales may have been that more than 80 per centum of the sales were to exporters, but this does not establish the ordinary course of trade in the offer and sale of the products involved. A manufacturer might offer his products to *all* purchasers who cared to buy, and his entire output might be taken by one purchaser, but that fact does not establish that he offered his merchandise *only* to the eventual buyer or that the ordinary course of trade was to offer and sell only to one buyer.

Moreover, even assuming that *some* manufacturers restricted their sales to exporters or trading houses, this does not controvert the direct evidence

that Nakamura did not, and, in such case, the percentage of sales made for direct export by Nakamura would be higher than the average. It must be remembered that plaintiff claims on the basis of export value for *such,* i.e., Nakamura's plywood. [Italics quoted.]

With respect to the evidentiary value of the Ito affidavit, the decision below recites:

> On the question of whether such merchandise was "freely" offered for sale to all purchasers, the evidence offered by the plaintiff establishes that there were no restrictions as to use, resale, or disposition of the offered plywood which would prevent a finding of free offer on the basis of export value. Ito's affidavit, collective exhibit 1, states that the only condition upon the offer and sale was that the product be exported, which, of course, is not a condition which would bar a finding of export value, since export value itself is concerned with the price at which merchandise is offered for sale "for exportation to the United States." *R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.)* v. *United States,* 42 C.C.P.A. (Customs) 55, C.A.D. 570.

> \* \* \* \* \* \* \*

> \* \* \* All of the statements made by Ito were made by the managing director of Nakamura, who states in his affidavit that he is "in charge of all domestic and overseas export sales and the policies thereof" and has "personal knowledge of the selling prices of the various items of plywood and doorskins manufactured and sold by my company for export to the United States."

> Such a man is one who, on those qualifications, would be competent to testify with respect to the way in which, and the prices at which, his firm offered and sold lauan plywood of the type in issue for exportation to the United States at the time here in question. His statements as to price, free offer to all purchasers, usual wholesale quantities, etc., are not statements of the result of his weighing facts and determining the preponderance thereof, nor are they reasoned conclusions drawn from evidentiary facts (cf. *Brooks Paper Company* case, *supra* [40 C.C.P.A. (Customs) 38, C.A.D. 495], and cases therein cited)—in each instance, the man was simply stating the policy of his company and the actual fact which took place under that policy.

> There was one price to all; hence, there was no occasion for his weighing various prices to various purchasers and concluding which was *the* statutory price at which the merchandise was offered and sold. There were no restrictions imposed by the seller in connection with the offer of his merchandise (except one which did not affect export value) ; hence, the statement of the actual fact is a statement of evidentiary, and not ultimate, fact. The offered price did not vary because of the quantity purchased; hence, he did not interpret the history of his firm's sales of plywood such as that at bar. [Italics quoted.]

Accordingly, the court below held that the freely offered price to all purchasers for exportation to the United States of the plywood blend here involved was the price set forth in Ito's affidavit, to wit, $69.56 per thousand square feet, net, packed.

Before this division, it is urged by appellant that there are no evidentiary facts of record to support the trial judge's findings. Citing *Kobe Import Co.* v. *United States,* 42 C.C.P.A. (Customs) 194, C.A.D. 593, and *United States* v. *Baar & Beards, Inc.,* 46 C.C.P.A. (Customs) 92, C.A.D. 705, counsel argues that the statements contained in the

affidavits of Ito and Okada, as well as the oral testimony of Davidson, consist merely of legal conclusions of those essential material facts which a party seeking a reappraisement of imported merchandise is required to establish.

Appellee contends, on the contrary, that it has established the claimed export value of the subject merchandise by a *prima facie* showing of the price at which such plywood was freely offered for sale to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade. The elements of proof on which appellee relies are the statements of Ito and Okada, based upon personal knowledge and experience, allegedly corroborated by the testimony of Davidson, citing *Kobe Import Co.* v. *United States*, 43 C.C.P.A. (Customs) 136, C.A.D. 620, and *Luria Steel & Trading Corp., Kurt Orban & Co., F. J. Cazalas et al.* v. *United States*, 42 Cust. Ct. 480, Reap. Dec. 9311.

The right of a party to introduce evidence through the medium of affidavits is expressly authorized by statute, 28 U.S.C. § 2633. It is the substance, not the form, however, which determines whether or not he has sustained his statutory burden of establishing that the values returned by the appraiser are erroneous and the claimed values are correct.

In the leading case of *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, it was held that for an affidavit to possess probative force, it must contain evidentiary facts, as distinguished from ultimate issuable facts. The court there stated:

* * * "Evidentiary" facts must be found from the testimony or other evidence. "Ultimate facts" are reasoned conclusions drawn from the evidentiary facts. *Commissioner of Internal Revenue* v. *Sharp et al.*, 91 F. (2d) 804, C.C.A. 3. Considered with reference to the facts or evidence by which they are established or proved, "ultimate facts" are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. *Hickey et al.* v. *Ritz-Carlton Restaurant & Hotel Co. of Atlantic City*, 96 F. (2d) 748, C.C.A. 3. The ultimate facts are the *issuable* facts without proof of which plaintiff cannot recover. *Maxwell Steel Vault Co.* v. *National Casket Co.*, 205 F. 515; see also *United States* v. *Smith*, 39 F. (2d) 851, C.C.A. 1. [Italics quoted.]

Accordingly, an uncorroborated statement in an affidavit that "the great majority of the sales * * * were in quantities of 15,000 square meters or more" was held to be an affiant's conclusion of an ultimate issuable fact, not itself evidence from which the ultimate fact determinative of usual wholesale quantities might be drawn.

The case of *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593, reiterates these principles in connection with a written declaration to the effect that the purchase prices of certain imported articles were the freely offered prices to all purchasers in

the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade. The court characterized this statement as insufficient to establish export value for the reason that it simply employed the exact terms of the statute, but contained no evidentiary facts to support it.

The recent case of *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705, in which export value was also in issue, turned upon the question of the evidentiary sufficiency of this statement:

> * * * *On April 16, 1953 silk scarves identical with those shipped were freely offered for sale and were sold to all persons in Tokyo, Yokohama and Kobe, the principal markets of Japan for the sale of such merchandise for exportation to the United States at $2.85 per dozen F.O.B. Yokohama,* and the price did not vary by reason of the quantity purchased. [Italics quoted.]

Except for the portion of the quoted statement not italicized, this is but another instance of a recital of the terms of the export value statute, unsupported by the evidentiary facts from which these conclusions were drawn, and our appellate court so held. The court was particularly prompted to this view by the additional circumstance that the market for the sale of silk scarves in Japan was otherwise shown to have been operating with something less than strict compliance with Japanese law, and the affidavit was executed more than 2 years after the complicated transactions to which it related.

We are inclined to agree with the trial court that the evidence in the instant case is not subject to the same infirmities which deprived the affidavits in the *Brooks, Kobe*, and *Baar & Beards* cases, *supra*, of their probative force. Here, we have an affidavit of the export manager of the manufacturer which is based on 15 years of experience in handling his company's domestic and export sales, and determining its policies with respect thereto. Clearly, he is competent to state that the price of his company's merchandise did not vary with the quantity sold, and that sales of plywood were conditioned only upon the requirement that the goods sold be exported. A condition such as the latter has been held not to be a restriction within the purview of the export value provision. *R. J. Saunders & Co., Inc. (Perry H. Chipurnoi, Inc.)* v. *United States*, 42 C.C.P.A. (Customs) 55, C.A.D. 570. These were the facts as he knew and experienced them. His statements were not expressions of opinion based upon unrevealed data, nor conclusions drawn from facts not of record. They were declarations of what he did and how he did it, and, to that extent, constituted primary evidence.

As this court has stated in *Luria Steel & Trading Corp., supra*:

> Where, however, the price does not vary with the quantities sold, no question of usual wholesale quantities can arise. *Jenkins Brothers* v. *United States*, 25 C.C.P.A. (Customs) 90, T.D. 49093. And a statement by an affiant to that

effect is one which, not being dependent upon interpretation of facts or evaluation of sales, is itself a fact, not a conclusion, to which a qualified witness is competent to attest, without the necessity of providing corroborative evidence. Similarly, it is competent for a witness to assert, as matter wihin his personal knowledge, that no restrictions accompanied his sales.

Moreover, Ito's affidavit is supported not only by Okada's affidavit, but also by the testimony of Davidson, who was able to state from his own extensive personal experience that, as far as he knew, the manufacturer did not sell to others at different prices. Wider latitude is permitted in evaluating testimony given in open court, where an opportunity is afforded opposing counsel to cross-examine, and thus to probe deeper into the facts or opinions stated by a witness. *Kobe Import Co*. v. *United States*, 43 C.C.P.A. (Customs) 136, C.A.D. 620.

We are of opinion, therefore, that the evidence proffered by appellee at the trial of the instant action established, *prima facie*, that merchandise, such as that at bar, was freely offered for sale, in the ordinary course of trade, to any one who cared to buy it at the price of $69.56 per thousand square feet, which price did not vary with the quantity purchased. Since, as demonstrated in the opinion below, there is no issue here of principal markets, and the quota limitations, being burdens imposed upon the buyers, were not restrictions upon the free offerings of this merchandise (*Rico, Inc.* v. *United States*, 44 Cust. Ct. 788, A.R.D. 121) (appeal pending, suit 5043), the presumption of correctness attaching to the appraiser's return of value was overcome by appellee's *prima facie* showing and the burden of going forward with proof shifted to the appellant.

Appellant's proof, as heretofore noted, consists of a report of an investigation of the manufacturer of the merchandise at bar, as well as a report of an investigation of the Japanese plywood market in general. When defendant's exhibit A was introduced into evidence, the following colloquy took place:

MR. SKLAROFF: At this time I offer into evidence as Exhibit A a copy of a report, certified, from the Treasury Department, Bureau of Customs, in Tokyo, Japan, to the Commissioner of Customs, Division of Investigations, dated March 25, 1955, referred to as 643.3, 150/54, 21/5.

MR. GLAD: Your Honor, the only objection I have to this is that this is dated March 25, 1955, which is considerably before the importation of this particular merchandise. Therefore, I consider it as being irrelevant.

MR. SKLAROFF: May I ask Mr. Glad if he is contending that the course of business has changed from the time of this report until these entries before the court?

MR. GLAD: I doubt if it has.

MR. SKLAROFF: Then why object?

MR. GLAD: But I don't know.

JUDGE WILSON: When was the merchandise in question imported?

MR. GLAD: In the latter half of 1956, your Honor. And I also object to this because they have ultimate conclusions of fact and law in this which have no facts to support them.

JUDGE WILSON: We often run into that in affidavits so we ignore those parts.

MR. GLAD: As long as the court will ignore those parts, I have no objection.

JUDGE WILSON: If they draw ultimate conclusions they won't be persuasive. But they will be received.

\* \* \* \* \* \* \*

As we construe these reports, they tend to contradict, rather than to corroborate, the statements contained in plaintiff's exhibits, as they purport to show, especially with respect to Nakamura Plywood Co., that plywood was not freely offered for sale for direct exportation to the United States. However, the reports are based upon information obtained from others, and are not substantiated by primary evidence of the conclusions stated, whereas the affidavit contains statements having *per se* evidentiary value deriving from the personal experience of the affiant. The former, therefore, may not be considered as controverting the direct evidence introduced in behalf of appellee. Moreover, they speak of a period approximately a year and one-half prior to the instant importations and, therefore, do not necessarily portray the business practices of the manufacturer of this merchandise at the time of exportation.

Based upon the foregoing considerations, we are of opinion that the trial judge properly held that appellee sustained its burden of overcoming the presumptively correct appraised values and of establishing affirmatively its claimed value. The trial court's findings of fact and conclusions of law are herein adopted, with the same force and effect as if restated, and its judgment is affirmed.

Judgment will be entered accordingly.