(Reap. Dec. 10089)

SANI SMOKE, INC. *v*. UNITED STATES

Entry No. 787009.

(Decided October 25, 1961)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the plaintiff.
*William H. Orrick, Jr.,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

DONLON, Judge: This is an appeal for reappraisement of patented table lighters, which were exported from West Germany on October 2, 1957. Appraisement was on the basis of United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended, at a value of $4.81 per lighter, net packed.

Plaintiff contends that the lighter was not freely offered for sale to all purchasers in the United States and, hence, there is no United States value. The basis of valuation for which plaintiff argues is cost of production.

Counsel for plaintiff and defendant have stipulated in open court that the manufacturer of these lighters sold them in the home market of West Germany only to buyers who *agreed* to resell at the manufacturer's suggested retail price. This is not such a free offer as to support foreign value as a basis of appraisement of such merchandise, as defined in section 402(c), as amended. *J. H. Cottman & Co.* v. *United States,* 20 C.C.P.A. (Customs) 344; *United States* v. *Half Moon Mfg. & Trading Co., Inc.,* 28 C.C.P.A. (Customs) 1, C.A.D. 115.

As to export value, it was similarly stipulated that the importer of the instant merchandise was the exclusive buyer to whom such merchandise was offered for export to the United States. Hence, there is no basis for a finding of export value for appraisement of such merchandise. *United States* v. *Testing Machines, Inc.,* 12 Cust. Ct. 375, Reap. Dec. 5981.

It is noted that the proofs of record negate foreign or export value as appraisement bases for *such* merchandise, but do not specifically establish proofs that negate either a foreign or an export value for *similar* merchandise. The parties have stipulated "that there is no foreign value or export value, as defined in Section 402 of the Tariff Act of 1930, as amended." Such stipulation is not acceptable. It is not the proof of facts on which a finding of fact may be made. It is an attempt to stipulate a finding of law, which is not proper. However, there is a presumption of correctness that attaches to the appraisers' findings, and this includes the presumption that the appraiser has found each and every fact requisite to the appraisement which he

made. Before proceeding to valuation on the basis of United States value, the presumption is that the appraiser found there were no offerings in West Germany of similar merchandise which could support a finding of a foreign or an export value for similar merchandise.

Plaintiff's burden is, first, to show by adequate proofs that such lighters, or similar lighters, were not freely offered for sale to all purchasers in the United States, as defined in section 402(e), as amended, before plaintiff may proceed to prove what the cost of production of these lighters was. Plaintiff concedes that, if the correct basis of appraisement is found to be United States value, the appraised value is correct.

If cost of production is found to be the correct basis of appraisement, it has been stipulated by the parties that such value is $3.15 per lighter, the value for which plaintiff contends.

The sole issue, therefore, is whether plaintiff has shown by adequate proofs that there is no United States value either for such or for similar merchandise.

The official papers are in evidence. There is also in evidence a sample lighter, model No. 9629, said to be illustrative of model No. 1002G, of this litigation, as to the method of operating the lighter. (Illustrative exhibit 1.) Plaintiff also put into evidence a pamphlet which shows various models of lighters, including model No. 1002G, with suggested retail prices (exhibit 2); a price list to jobbers for lighters (exhibit 3); and a list of sales of such lighters in the United States from July 1, 1956, to February 27, 1958, inclusive (exhibit 4).

Defendant introduced into evidence a customs agent's report, dated March 25, 1959 (exhibit A).

Mr. Frank Salinger, plaintiff's sales manager, testified. When shown the official entry papers, he stated that he was familiar with the merchandise of this litigation and that he has sold lighter model No. 1002G. Mr. Salinger is sales manager also for Fumaro, Inc., a New York firm. He said that lighters imported by plaintiff are sold in the United States exclusively by Fumaro, Inc.

Mr. Salinger described the operation of the lighter. You lift the lighter, and automatically it lights. You "press it down again," and the flame goes out. In selling lighters like model No. 1002G, Mr. Salinger testified that he called on high-class retail stores in New York City, White Plains, Hartford, Boston, Philadelphia, Baltimore, Wilmington, and Washington. Offers to sell also were sent to jobbers, particularly those jobbers that service the advertising and premium trade.

Exhibit 3 is a jobbers' pricelist, effective January 1, 1957, for lighters of various types. Most sales were made to jobbers who sell to industrial firms which use the lighters as "public relations" gifts. Mr. Salinger identified Abercrombie & Fitch, Saks Fifth Avenue, Altman's, Lord & Taylor, Brooks Bros., and Tripler as retailers who had purchased the lighters. Neither sales, nor offers to sell, were made to discount houses.

There were some direct sales to special accounts in the advertising trade. These were firms which had purchased the lighters direct from the manufacturer prior to the time when Sani-Smoke, Inc., obtained an exclusive agreement for the United States, which agreement became effective September 1, 1956. Sales to the advertising trade were made at special prices, by agreement with the manufacturer in West Germany.

Mr. Salinger stated that his sales policy was to find firms that had "the proper outlets for the lighter, etc., in the advertising field or dealing with high-class retailers, which would be the logical retail outlets for the lighter." (R. 24.) The reason for suggesting retail prices was to satisfy the so-called high-class retail stores, which were not interested in handling the lighter, if prices were cut. Five to 8 per centum of the sales, as listed on exhibit 4, were made to retailers.

On cross-examination, Mr. Salinger testified that he had no objection to selling the lighter to any and all jobbers, as it was up to the jobber to know whether or not he could dispose of the lighter at a profit. Control over the suggested retail price was explained by Mr. Salinger as follows:

X Q. You also told us you had an interest in keeping the suggested retail price at its level.—A. Yes.

X Q. So you could sell it properly.—A. Yes.

X Q. Supposing somebody sold it at less than suggested retail price, what happened, outside of the fact that he made less profit?—A. Nothing happened. The only thing——

X Q. That was my question.—A. Yes. [R. 33.]

Mr. Salinger did not know and was never advised of any retail sales made at less than the suggested price. He could not even speculate what would have happened if this were the case. It might be that he would lose some sales to stores like Saks Fifth Avenue and Abercrombie & Fitch, since they frequently told him that they were not interested in the lighter, if others were selling the lighter below the suggested retail price.

This is the substance of the proofs.

Plaintiff's argument is that, since it suggested the retail price to certain retailers and jobbers, it did not freely offer the lighter to all purchasers in the United States, citing *United States* v. *American Glanzstoff Corp.*, 24 C.C.P.A. (Customs) 35, as authority.

In the *Glanzstoff* case, our appeals court defined the expression "all purchasers" to mean "all of those who cared to buy such goods in such markets." The record here does not show that anyone who cared to buy could not do so. Indeed, plaintiff's witness testified that he had no objection to selling the lighter to any and all jobbers. It is true that plaintiff solicited the trade of certain customers, but this is generally true where novel or unusual merchandise is being introduced and its sales value tested.

Much the same argument was raised in *Rico, Inc.* v. *United States*, 44 Cust. Ct. 788, A.R.D. 121, affirmed on appeal, *Id.* v. *Id.*, 48 C.C.P.A. (Customs) 110, C.A.D. 773. In the *Rico* case, the merchandise was frozen strawberries, packed in 27- and 29-pound tins. They were appraised at the export value of similar frozen strawberries which were packed in 30-pound tins. Our appeals court said, *inter alia*:

* * * The importer, in this appeal, has pressed the single point that the decision of the Customs Court was erroneous in that the evidence shows that the merchandise in question was not "freely offered for sale to all purchasers." It does not challenge the holding of the court below to the effect that all other necessary factors of export value are supplied by the presumption of correctness of the appraiser's action.

\* \* \* \* \* \* \*

The appellant recognizes that this court has ruled that the expression in the statute, "all purchasers," means "all those who care to buy such goods in such markets" and that the strawberries in question were packed for and freely offered to the institutional and processing trades, but attempts to avoid the impact of that ruling by an argument that the merchandise here involved is strawberries and not strawberries packed in a particular manner suitable for one class of customers only. It does not seem necessary, however, to rest the decision of this case entirely upon the proposition that, when goods are so packed that only one class of customers can use them, they are freely offered to all purchases, because "all purchasers" means that class of customers to whom they are useful as so packed.

In the present case there is no evidence of any instance of a refusal to sell Mexican, whole, frozen strawberries packed in the large tins to the retail trade or to anyone else, and the appellant's argument that "all purchasers" means exactly that and not merely "all those who care to buy such goods" could be accepted without changing the conclusion reached by the Customs Court.

It may be true that retailers and individuals are not in the class of "those who care to buy" the big tins of strawberries, but there is no evidence to show that the manufacturer would refuse to sell to them. "Offered for sale" does not require active solicitation of customers, nor does it require that the goods be so packaged as to meet the needs of all customers. A restriction inherent in

the packaging of the goods which results in only a certain class of customers desiring to purchase such goods is not a restriction upon offering for sale. It would seem that to defeat the conception of a free offering the restriction would be one involving some form of marketing practice resulting in the arbitrary exclusion from the market of certain customers or classes of customers by a refusal to sell to them on an equal footing with others, or at all.

If the appellant's position in this case is sustained, we do not see how it can be said that any merchandise which can be packed in packages of various sizes and kinds is ever freely offered for sale, except in the rare instance in which a manufacturer distributes his product packed in all conceivable sizes and types of packages. In fact, in the present case, on the appellant's theory a manufacturer who sells frozen strawberries packed in 10- or 12-ounce packages for the retail trade is not freely offering the product to all purchasers, because such items would hardly appeal to processors or manufacturers.

Similarly, if plaintiff's position in this appeal is sustained, it can hardly be said that any merchandise is freely offered unless there is active solicitation of everyone who might buy. That is not the law. Actual offers need not be shown. Plaintiff has failed to show any instances of refusal to sell these lighters to jobbers or to any one else. It has tied sales to a hope and expectation that suggested retail prices would be honored, but concedes that nothing happened if somebody sold at less than the suggested retail price.

Plaintiff has not shown that there were not free offerings of such lighters in the United States, such as section 402(e) contemplates. It has, moreover, presented no proofs whatsoever to negate the conditions basic to a finding of United States value of similar merchandise. There is no possibility, under the law, of proceeding to valuation on the basis of cost of production, for plaintiff has not borne its burden of proof.

I find as facts:

1. That the merchandise of this appeal consists of a lighter, model No. 1002G, exported from West Germany on October 2, 1957.

2. That, at the time of exportation, such or similar merchandise was not freely offered to all purchasers in West Germany for home consumption or for export.

3. That, at the time of exportation, such merchandise was freely offered for sale to all purchasers in the principal market of the United States.

I conclude as a matter of law:

1. That, at the time of exportation, there was no foreign value or export value for such or similar merchandise, as that value is defined in section 402(c) or (d) of the Tariff Act of 1930, as amended.

2. That United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended, is the proper basis of appraisement

and that the United States value of such merchandise is the appraised value.

Judgment will be entered accordingly.