(R.D. 11507)

PLYWALL PRODUCTS COMPANY, INC. v. UNITED STATES

Entry No. 229144.

(Decided April 3, 1968)

*Lawrence & Tuttle* and *Glad & Tuttle* (*Edward N. Glad* and *Robert Glenn White* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

WATSON, Judge: This appeal for reappraisement involves 80,000 pieces of print-grade rotary-cut lauan plywood, type II, each piece being, as described on the invoice, in the size of "3/16 x 4 x 7", exported from Korea on or about September 19, 1963. The merchandise was invoiced at a C. & F. American port unit price of $52.303 (United States currency) per thousand square feet.

Entry of the involved merchandise was made at $46.50 (United States currency) per thousand square feet. Appraisement of the merchandise was made at the latter value, on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. Plaintiff claims the correct export value, as above defined, is the entered value, less a quantity discount of 1½ percent.

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, provides:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of ex-

portation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

It was stipulated between counsel that this merchandise is not on the final list promulgated under the Customs Simplification Act of 1956 and that the proper basis of appraisement is export value, section 402(b) of the Tariff Act of 1930, as amended, *supra*. (R. 3–4.)

The issue in this case, therefore, is whether the plaintiff has established that the involved merchandise was freely sold or offered for sale to all purchasers, for exportation to the United States, at a price of $46.50 per thousand square feet, less a 1½ percent quantity discount.

The record in this case consists of two exhibits together with the testimony of one witness, offered on behalf of the plaintiff.

Plaintiff's exhibit 1 is an affidavit executed by Mr. Taik Bo Chun, president of Chunusa Company, Ltd., shipper of the plywood herein involved. He testified that he is responsible for the pricing and sales of the plywood his firm makes, both for home consumption and for exportation. He further testified that, although the plaintiff in this case takes 90 percent of Chunusa's production of export grade plywood, Chunusa has no exclusive agreement with the plaintiff. With regard to plywood offered by his firm for exportation to the United States, the affiant stated:

That my firm offered its plywood for exportation to the United States, in two different ways, either at a price which includes the cost of packing and other charges incident to placing the merchandise in condition packed ready for shipment to the United States as well as the freight from our factory or principal place of business and other handling charges necessary to placing the merchandise on vessels to be transported to the United States, or at a price including all the foregoing plus ocean freight to any American port. Whether the purchaser buys at the current f.o.b. Korean port price or at the current C & F American port price is up to the purchaser to choose. The difference between the f.o.b. price for any one particular grade of plywood at any one time from the C & F West Coast port price is the inclusion of $6.50 per thousand square feet as freight to the West Coast of the United States.

That the price we quote is the same to all purchasers except that we do grant a 1½% quantity discount from the f.o.b. price to any purchaser buying over one million square feet per order. That, for example, with regard to our print grade plywood in size $3/16''$ thickness in 4′ x 7′ or 4′ x 8′ our firm was offering this plywood for exportation to the United States from July through October 1963 at an f.o.b. price of $46.50 per thousand square feet and a C & F price to the West Coast

of $53.00 per thousand square feet, which latter price again included the $6.50 per M. Sq. Ft. for ocean freight. On orders of over one million square feet, the net f.o.b. price after deduction of the 1½% discount came to $45.80 per M. Sq. Ft.

\* \* \* \* \* \* \*

That during the six last months of 1963 the greatest aggregate of sales made by our firm of the print grade plywood, $\frac{3}{16}''$ thickness of either 4' x 7' or 4' x 8' for export to the United States was at the price which included the 1½% quantity discount as is shown by the following list of sales for export to the United States during this period wherein the terms were all C & F West Coast Port:

| Date of Purchase Order | Amount of Plywood | Price per MSF |
| --- | --- | --- |
| August 9, 1963 | 11,280 MSF | $52. 303 |
| November 12, 1963 | 6,120 MSF | $50, 825 |

Plaintiff's exhibit 2 is a purchase order dated April 12, 1963, of plaintiff herein for 100,000 pieces (2,800,000 square feet) of plywood from Chunusa Company, Ltd. The order resulted in a partial shipment of the 80,000 pieces involved herein. The order specifies both $53 per thousand square feet, C. & F. San Diego, California, and $46.50 per thousand square feet, f.o.b., plus $6.50 per thousand square feet "freight", as the price and contains the following note:

Less 1½% FOB cash discount and .50¢/MSF repayment of New York loan.

Plaintiff's witness was Mr. William Suiter, formerly manager of the import department of the plaintiff company, who testified that as such he was responsible for arranging for its purchase of plywood. He states that he placed purchase orders "for a minimum of 90 days, ahead of time" because the plywood mills preferred quarterly orders. (R. 9.) The witness identified plaintiff's exhibit 2 as an order placed by him while in Korea, which is one of which the importation at bar is a partial shipment or delivery. (R. 12.) Mr. Suiter then testified that he first visited the Chunusa Company, Ltd., the supplier in this case, some time around April 1962, on which occasion he became familiar with Chunusa's production capacity for print-grade plywood. He stated that, on the basis of inspecting its factory and personally viewing the machinery which Chunusa had for the production of plywood, he concluded that "we were purchasing approximately 90 percent of their total capacity, total export capacity." (R. 15.) Mr. Suiter further testified that "in view of the quantity" of plywood the plaintiff was buying, he suggested to Chunusa that plaintiff "should be entitled to a discount below the price that other people buying lesser quantities \* \* \* would be entitled to." (R. 16.) The record discloses that plaintiff was then buying approximately 3,000,000 square feet.

On cross-examination, Mr. Suiter, in further explanation of his discount arrangements with Chunusa, testified that he and Mr. Flahive,

president of the plaintiff company, had initiated the discussion with Chunusa regarding a "discount", and that Chunusa had not up to that point mentioned any such quantity "discount". Nor had Chunusa shown him or Mr. Flahive any written pricelist or listing of prices for merchandise such as here in issue. (R. 17.) The witness reiterated that his discussions with Chunusa were had in terms of the quantity in which he ordered the merchandise. He acknowledged that around the period of July to October of 1963, he had some shipments of as little as 20,000 pieces, and stated that his firm would pay the same price for them as it did for the remainder of an order of 80,000 pieces. (R. 18.)

Upon redirect examination, Mr. Suiter testified that when visiting the supplier, Chunusa, that firm would indicate the value that it placed on the merchandise and that such negotiations were predicated upon the assurance that plaintiff would continue to purchase at least 90 percent of the production of the supplier, in which case plaintiff would then agree to the price. Upon further examination, plaintiff's witness affirmed that he had made the request for the "discount" based upon the expectation that plaintiff would be taking approximately 90 percent of the output of the supplier. (R. 19–20.)

It is fundamental that the value returned by the appraiser is presumed to be correct and that anyone challenging the appraiser's value must prove, by competent evidence, facts showing the price at which the merchandise was freely sold or freely offered for sale to all purchasers, in usual wholesale quantities and in the ordinary course of trade for exportation to the United States. *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; and *United States* v. *Getz Bros. & Co. et al.*, 55 CCPA 11, C.A.D. 927.

The record in the case at bar discloses, in my opinion, that the so-called "discount" was negotiated with the seller and, furthermore, that it was negotiated at the initiative of the plaintiff, and was not offered or extended in the first instance at the initiative of the seller, Chunusa. As heretofore noted, plaintiff's witness testified that "in view of the quantity" of plywood that his concern was buying, he suggested to Chunusa that plaintiff "should be entitled to a discount" below the price that other purchasers buying lesser quantities would be entitled to or have to pay. However, a price, which has been arrived at by bargaining between seller and buyer, is one which does not meet the statutory requirement of a price "freely offered to all purchasers".

The reasoning of the court in *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129, appears applicable in the case at bar. In that case, as the result of bargaining, goods were sold at various discounts from list prices as well as at list price. Some purchasers received no discount. The appellate court held that the list price was the only price at which the goods were offered to all purchasers.

The situation in the case at bar is not unlike that which prevailed in *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 715, R.D. 11169 (application for review pending). In that case, on an arrangement whereby the importer, Dodge Cork Co., Inc., would take a certain volume of the manufacturer's goods per annum, the purchaser agreed to a basic set of prices whereby as long as the purchaser was able to take up that volume, it could buy at those prices. The price therein did not vary with the quantity purchased in an individual order. The record disclosed, however, that no one other than the purchaser in that case could have purchased at the prices obtained by it in a quantity however large, unless he opened negotiations with the sellers and satisfied them that he was equally desirable as a customer in meeting certain conditions, in addition to the volume he wished to order, as was the purchaser there involved. The court in the *Vandegrift* case, *supra*, in holding that the prices to the purchaser, Dodge, were not those at which the merchandise was freely sold or offered for sale to all purchasers, stated as follows:

* * * The fact that a person who met these conditions would buy at Dodge's prices was locked in the breast of the seller, not communicated to any potential United States customer. No extended dissertation by me is required to show that this is not a freely offered price.

Here, it appears that the plaintiff sought, by virtue of its position as a purchaser of relatively high quantities of merchandise, over extended periods, and obtained a preferential price from the seller below the price that other possible purchasers buying in lesser quantities would be granted.

Plaintiff's witness admitted that the price obtained by his company was predicated on the continued purchase of 90 percent of the production of the seller of the involved merchandise. Accordingly, it would appear that if the plaintiff was "currently" purchasing 3,000,000 square feet per annum, as testified to by plaintiff's witness, there would then remain less than 300,000 square feet annually for purchase by others. This factor hardly accords with the statement of the affiant in plaintiff's exhibit 1 that he "offered" the same 1½ percent discount to any other purchaser who purchased in a single order covering 1,000,000 square feet or more. The end result of the taking by the plaintiff of 90 percent of the seller's production would be to deny to other purchasers this so-called "discount". A mere "willingness" to sell to others is not alone sufficient to establish a freely offered price for valuation purposes when it appears that the price is one which is not extended to all purchasers. Further, there is no factual evidence in this case of an offer let alone a sale of merchandise such as is here involved to other purchasers at the claimed price accorded the plaintiff in this case.

The situation in this case differs, in my opinion, from that which prevailed in the case of *National Carloading Corp.* v. *United States*, 43 Cust. Ct. 531, Reap. Dec. 9535, affirmed in *United States* v. *National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125, cited in support of plaintiff's claim herein. There, the court (Reap. Dec. 9535) held that the fact that less than 20 per centum of the total sales by Japanese manufacturers of plywood were made directly to American importers and that more than 80 per centum of such sales were made to Japanese exporters or trading houses did not warrant the conclusion that the ordinary course of trade was to sell to exporters or trading houses and that sales directly to American importers were "exceptional". In so holding, the court in the *National Carloading* case (Reap. Dec. 9535), *supra*, at page 534, stated:

* * * The *result* of the offers and sales may have been that more than 80 per centum of the sales were to exporters, but this does not establish the ordinary course of trade in the offer and sale of the products involved. A manufacturer might offer his products to *all* purchasers who cared to buy, and his entire output might be taken by one purchaser, but that fact does not establish that he offered his merchandise *only* to the eventual buyer or that the ordinary course of trade was to offer and sell only to one buyer. [Italics quoted.]

In the case at bar, however, the sale of the involved merchandise and the price arrived at, including the so-called "discount", was by negotiation which the record discloses was initiated by the buyer, by virtue of which other purchasers were precluded from buying at the price negotiated between buyer and seller in this case. There is nothing in the present record to establish that the seller of the merchandise offered his goods to purchasers other than the "eventual" buyer. The factors present in the *National Carloading* case, *supra*, and those in the case at bar are different, and the latter case is, accordingly, distinguishable from the one before us.

Plaintiff in the case at bar maintains that the record in this case establishes that the manufacturer herein sells the greatest "aggregate volume" of such plywood as here involved at the price which includes the so-called quantity "discount" of 1½ per centum and that, accordingly, sale of the imported merchandise is governed by the provisions of section 402(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, with respect to the term "usual wholesale quantities". (See, in this connection, *Independent Cordage Co., Inc.* v. *United States*, 59 Cust. Ct. 718, R.D. 11380 (application for review pending).) Plaintiff in its brief herein asserts that "the list of sales contained in [plaintiff's] Exhibit 1 for the last six months of 1963 shows that all sales were made at a price which included the quantity discount of 1½%". Said exhibit does not attempt, however, to list *all* sales by Chunusa for "a reasonable period of time" prior to the date

of exportation and merely states the affiant's conclusion that "during the last six months of 1963 the greatest aggregate of sales made by our firm of the print grade plywood * * * for export to the United States was at the price which included the 1½% quantity discount". However, by the volume indicated in the two purchase orders of August 9, 1963, and November 12, 1963, listed in said exhibit, it would appear that both of these were placed by the plaintiff. Nothing in the exhibit discloses sales, quantities, or prices to purchasers other than the plaintiff, or total sales. The price negotiated here between plaintiff and Chunusa is not one dependent upon "usual wholesale quantities" in the true sense of the meaning of that term under the tariff act, as amended, *supra*. The sole issue here is whether the price of the merchandise, including the so-called discount, was one extended to *all* purchasers. In my opinion, plaintiff in this case has failed to establish that the claimed discount was freely offered to all purchasers.

Plaintiff in this case directs our attention to the decision of the court in the case of *White Lamb Finley, Inc.* v. *United States*, 29 CCPA 199, C.A.D. 192, herein relative to the holding of the appellate court that, where merchandise was sold for future delivery and which could be promptly delivered after the date of sale, the "offer" represented by the agreed upon sale price was "substantial evidence of the export value of the involved merchandise at the time of exportation thereof". That case, in my opinion, is not in point in our present determination of the freely offered price of the invloved merchandise to *all* purchasers on the date of exportation.

For all the aforesaid reasons, plaintiff, in my opinion, has not sustained the twofold burden imposed upon it under the statute of not only proving that the action of the appraiser was erroneous, but also of establishing the correct dutiable value of the merchandise in question. *Kobe Import Co.*, *supra*; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502.

On the basis of the record presented, I find as facts:

1. That the merchandise involved herein consists of print-grade rotary-cut lauan plywood, type II, exported from the Republic of Korea on or about September 19, 1963.

2. That the merchandise does not appear on the "Final List", T.D. 54521, promulgated by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956, T.D. 54165.

3. That the merchandise was appraised at $46.50 per thousand square feet on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That the plaintiff has failed to prove, by substantial or competent evidence, that on or about the date of exportation, the involved

merchandise was freely offered for sale to all purchasers at $46.50 per thousand square feet, less a 1½ percent quantity discount.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended, *supra*, is the proper basis for the determination of the value of the merchandise involved herein.

2. That such value is the value at which the merchandise was appraised.

Judgment will be entered accordingly.