(Reap. Dec. 9535)

NATIONAL CARLOADING CORP. *v.* UNITED STATES

Entry Nos. 765674 1/2; 787005; 813232.

(Decided November 10, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Hadley S. King* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Skarloff*, trial attorney), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement (which were consolidated for trial together) of the value of certain plywood imported from Japan during the latter half of the year 1956. The particular type of plywood involved is known as rotary lauan V-grooved plywood, 48 by 96 inches in size and one-fourth of an inch in thickness. The plywood under appraisement was purchased in Japan by Pacific Wood Products Co., the importer and ultimate consignee of the involved shipments (hereinafter referred to as "Pacific"), from the manufacturer, Nakamura Plywood Co. of Nagoya, Japan (hereinafter referred to as "Nakamura").

The merchandise covered by the present shipments was invoiced and entered at $70.26 per thousand square feet, net, packed, and was appraised at $75.50 per thousand square feet, net, packed, in the case of the shipments involved in reappraisements R58/12630 and R58/12631, and at $77 per thousand square feet, net, packed, in the case of the shipment involved in reappraisement R58/13655. The plaintiff contends that the correct value of the merchandise is $69.56 per thousand square feet, net, packed, which is approximately 1 per centum less than the invoiced and entered value.

It appears from the record that plywood such as that at bar is made in four grades or qualities, and that at the time of exportation of the merchandise involved there were various methods used by the manufacturers, exporters, and importers of denominating the four grades or qualities. However, it also appears that the plywood involved in these cases consisted of a blend of 37½ per centum of the first grade or quality, 37½ per centum of the second grade or quality, and 25 per centum of the third grade or quality.

It was stipulated by the parties that during the period in question there was no foreign value, as defined by section 402(c), as amended, of the Tariff Act of 1930, and it is the plaintiff's contention that the proper basis of value for the merchandise is export value, as defined in section 402(d) of the same act.

Defendant has not revealed whether the merchandise was appraised on the basis of export value, or whether its position is that the merchandise should be valued on that basis. Defendant's sole contention is that plaintiff failed to establish any value for the merchandise at bar other than that returned in each case by the appraiser.

Both parties offered evidence at the trial. From the overall picture of the evidence offered by both parties, it appears that, at or about the time of exportation of the involved merchandise, lauan plywood of the type here involved was produced in Japan by a number of manufacturers, of which Nakamura was one. There existed in Japan a number of firms which are denominated in defendant's evidence as "exporters" and in the plaintiff's evidence as "trading houses." However denominated, these firms were in the business of purchasing plywood from the manufacturers and selling the same to American importers.

The present importer, Pacific, did not deal with the exporters or trading houses, but maintained an office of its own in Tokyo for the purpose of purchasing Japanese plywood and other wood products, and it was through that office that the plywood at bar was purchased from Nakamura.

The evidence offered by both parties establishes that there was no limitation or restriction on the part of the manufacturers of the offer or sale of their plywood only to the exporters or trading houses. According to the affidavit of Hiromitsu Ito, the managing director of Nakamura, that factory offered and sold its plywood for export to the United States to anyone who cared to purchase the same. The statements to this effect in Ito's affidavit are corroborated by statements made in the affidavit of Peter Okada, a vice president of Pacific in charge of its Tokyo office, and in the oral testimony of Jack Davidson, executive vice president of Pacific.

Both of these men, in the discharge of their duties as officers of Pacific, had occasion and opportunity to familiarize themselves with

the market situation in Japan for plywood of the type here involved, and their experience in that regard corroborates Ito's statements.

Moreover, this evidence is not actually controverted by the evidence offered by the defendant, but, on the contrary, is corroborated thereby.

In defendant's exhibit B, being the report of a United States appraiser of merchandise detailing an investigation he made in 1955 of the plywood situation or market in Japan, the following is stated:

> While some manufacturers have sold their merchandise for direct export, these instances are exceptional, and are stated by the Japan Plywood Exporters Association to constitute less than 20% of the total sales. The ordinary course of trade is for manufacturers to sell to exporters on an FOB shipping port basis. The exporters in turn sell to importers in the United States on the same basis or on a C&F or CIF basis depending upon the desires of the importer.

The first sentence of the foregoing excerpt shows that sales to others than exporters or trading houses were, in fact, made, and that they consituted a substantial and not "exceptional" (i.e., less than one-fifth but presumably more than one-sixth) part of total sales. The sentences which follow contain a conclusion directly at variance with the facts stated in the first sentence, i.e., that "The ordinary course of trade is for manufacturers to sell to exporters," etc. The only proper conclusion that can be drawn from the first sentence is that the ordinary course of trade was for manufacturers to sell *both* to exporters and for direct export (i.e., to American importers). The *result* of the offers and sales may have been that more than 80 per centum of the sales were to exporters, but this does not establish the ordinary course of trade in the offer and sale of the products involved. A manufacturer might offer his products to *all* purchasers who cared to buy, and his entire output might be taken by one purchaser, but that fact does not establish that he offered his merchandise *only* to the eventual buyer or that the ordinary course of trade was to offer and sell only to one buyer.

Moreover, even assuming that *some* manufacturers restricted their sales to exporters or trading houses, this does not controvert the direct evidence that Nakamura did not, and, in such case, the percentage of sales made for direct export by Nakamura would be higher than the average. It must be remembered that plaintiff claims on the basis of export value for *such*, i.e., Nakamura's, plywood.

Thus, when the evidence offered by both parties is weighed, it establishes that "all purchasers" within the meaning of section 402(d), *supra*, with respect to the offer and sale in Japan of plywood of the kind here involved (i.e., all of those who cared to buy such goods in such market—*United States* v. *American Glanzstoff Corp.*, 24 C.C.P.A. (Customs) 35, T.D. 48308) were the exporters or trading houses and American importers who purchased from the manufacturers for direct export to the United States.

On the question of whether such merchandise was "freely" offered for sale to all purchasers, the evidence offered by the plaintiff establishes that there were no restrictions as to use, resale, or disposition of the offered plywood which would prevent a finding of free offer on the basis of export value. Ito's affidavit, collective exhibit 1, states that the only condition upon the offer and sale was that the product be exported, which, of course, is not a condition which would bar a finding of export value, since export value itself is concerned with the price at which merchandise is offered for sale "for exportation to the United States." *R. J. Saunders & Co., Inc.* (*Perry H. Chipurnoi, Inc.*) v. *United States*, 42 C.C.P.A. (Customs) 55, C.A.D. 570.

There is nothing contained in the evidence offered by the defendant to controvert Ito's statement in this regard.

On the question of principal markets in Japan for the offer and sale of plywood such as that here in question, the fact of whether the principal markets were Tokyo, where the branch office of the importer was located, or the manufacturer's factory at Nagoya is academic, inasmuch as the evidence of both the plaintiff and the defendant is to the effect that offers and sales of plywood of the type here involved were made on an FOB shipping port basis, and it appears that the merchandise here involved was offered and sold on that basis. Under the decisions in the case of *United States* v. *Paul A. Straub & Co., Inc.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553, and *Albert Mottola, etc.* v. *United States*, 46 C.C.P.A. (Customs) 17, C.A.D. 689, the price to be adopted for valuation purposes in such situations is the FOB shipping port price, regardless of where the principal market is located.

The evidence offered on the part of the plaintiff with respect to usual wholesale quantities—also contained in Ito's affidavit—is that the price quoted and received by Nakamura for sale for export to the United States did not vary because of the quantity purchased. Again, this statement is not controverted by any of the defendant's evidence and establishes that there is no question of usual wholesale quantities involved in the export value of the merchandise in issue. *Jenkins Brothers* v. *United States*, 25 C.C.P.A. (Customs) 90, T.D. 49093.

From the foregoing, it clearly appears that at the time of exportation of the merchandise at bar:

* * * such * * * merchandise [was] freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States * * *,

and it follows, consequently, that if there was a uniform price at which such merchandise was so offered then export value is the proper basis of valuation for the merchandise at bar.

On this point, Ito states as follows in his affidavit, plaintiff's collective exhibit 1:

\* \* \* In the last six months of 1956 we freely offered and sold this item consisting of Type II Urea Resin Glue at the following price:

First Quality_____ $75.50 per thousand square feet
Second Quality_____ $68.00 per thousand square feet
Third Quality_____ $63.00 per thousand square feet

During the period in question, we therefore freely offered and sold a blend of this item consisting of 37½ percent first quality, 37½ percent second quality and 25 percent third quality with Type II Urea Resin Glue to anyone who cared to purchase [f]or export to the United States at $69.56 per thousand square feet.

None of the evidence offered by the defendant indicates the prices at which merchandise such as that here involved was offered for sale in Japan, so that the foregoing is not controverted by any of the evidence offered by the defendant.

Defendant characterizes all of the statements made in Ito's affidavit, collective exhibit 1, as conclusions of ultimate fact unsupported by evidentiary facts, and cites the cases of *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593; *United States* v. *Fisher Scientific Co.*, 44 C.C.P.A. (Customs) 122, C.A.D. 648; and *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705, as authority for holding them to be insufficient upon which a finding of value might be made.

As hereinbefore pointed out, certain of the evidence offered by the plaintiff, including certain of the statements made by Ito in his affidavit, was corroborated or supported by the evidence (excluding unwarranted opinions and conclusions contained therein) offered by the defendant.

As to the remainder of Ito's statements which are not the subject of any evidence offered by the defendant, but which are not controverted by any such evidence, I am of the opinion that there is a considerable distinction between the statements here involved and those in the cited cases. All of the statements made by Ito were made by the managing director of Nakamura, who states in his affidavit that he is "in charge of all domestic and overseas export sales and the policies thereof" and has "personal knowledge of the selling prices of the various items of plywood and doorskins manufactured and sold by my company for export to the United States."

Such a man is one who, on those qualifications, would be competent to testify with respect to the way in which, and the prices at which, his firm offered and sold lauan plywood of the type in issue for exportation to the United States at the time here in question. His statements as to price, free offer to all purchasers, usual wholesale quantities, etc., are not statements of the result of his weighing facts and determining the preponderance thereof, nor are they reasoned conclusions drawn from evidentiary facts (cf. *Brooks Paper Company* case, *supra*, and cases therein cited)—in each instance, the man was

simply stating the policy of his company and the actual fact which took place under that policy.

There was one price to all; hence, there was no occasion for his weighing various prices to various purchasers and concluding which was *the* statutory price at which the merchandise was offered and sold. There were no restrictions imposed by the seller in connection with the offer of his merchandise (except one which did not affect export value); hence, the statement of the actual fact is a statement of evidentiary, and not ultimate, fact. The offered price did not vary because of the quantity purchased; hence, he did not interpret the history of his firm's sales of plywood such as that at bar.

The nature of evidence as to facts given in such situations is aptly described in the opinion of Judge Rao of this court in the case of *Luria Steel & Trading Corp. et al.* v. *United States*, 42 Cust. Ct. 480, Reap. Dec. 9311, as follows:

> Where, however, the price does not vary with the quantities sold, no question of usual wholesale quantities can arise. *Jenkins Brothers* v. *United States*, 25 C.C.P.A. (Customs) 90, T. D. 49093. And a statement by an affiant to that effect is one which, *not being dependent upon interpretation of facts or evaluation of sales,* is itself a fact, not a conclusion, to which a qualified witness is competent to attest, without the necessity of providing corroborative evidence. Similarly, it is competent for a witness to assert, as matter within his personal knowledge, that no restrictions accompanied his sales. [Italics added.]

I am satisfied, therefore, that the evidence offered upon the trial of the issue in the case at bar is sufficient to overcome the presumption of correctness of the appraised value and to warrant a holding in favor of the claims made by the plaintiff.

Having reached the foregoing conclusion upon the evidence presented, I wish to make an observation independent of such conclusion to the effect that there is nothing to indicate that any of the statements made in the evidence offered by the plaintiff, with the exception of the price at which merchandise such as that at bar was offered for sale, were made with respect to any issue of fact which is controverted by the appraised value.

It is true that—

> The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise. [28 U.S.C. § 2633.]

And it has been held that every fact and intendment in support of the appraiser's decision must be presumed. *United States* v. *E. Dillingham, Inc.*, 73 Treas. Dec. 1597, Reap. Dec. 4329; also *United States* v. *Freedman & Slater, Inc.*, 25 C.C.P.A. (Customs) 112, 118, T.D. 49241, holding that—

> When the appraisement first came before the trial court, it must be presumed that the appraisement and all items thereof constituted the true valuation of the

merchandise and the burden rested upon the party who challenged its correctness or the correctness of any of its items to prove otherwise.

See also *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, and *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 C.C.P.A. (Customs) 243, C.A.D. 558, holding that there is a presumption of correctness which attaches to all items of an appraisement.

So that, in addition to the presumed correctness of the *monetary* amount returned by the appraiser as the value of the merchandise, there is a presumption that he correctly made every finding of fact necessary to support that value. Among such findings, of course, in every case is the basis of value which must be found by him under section 402 to be the correct basis for the valuation of the merchandise, and every element of such basis of value.

In the cases at bar, however, all that appears about the appraised value is the monetary amount returned, i.e., that, in two instances, it was at $75.50 per thousand square feet, net, packed, and, in the other instance, it was at $77 per thousand feet, net, packed. In view of the fact that the defendant, who, it appears, is the only one who has the information, has chosen not to reveal the basis of the appraisement or the facts as to the elements of such basis, we do not know whether it was on the basis of export value or United States value, both of which are compatible with a return of value in United States dollars.

(It appears that the appraised basis of valuation was not foreign value, in view of the stipulation entered into between the parties that no foreign value existed, and also from the fact that the return was in United States dollars, which, presumably, is not a currency in which merchandise would be bought and sold in Japan for home consumption. Presumably, also, if the appraisement had been made on the basis of cost of production, the value would have been returned in Japanese currency, since the costs in Japan would be determined in that currency.)

Thus, while it is not known that the merchandise *was* appraised on the basis of export value, on the other hand, it is not known that it *was not* appraised on that basis.

Since the plaintiff claims on the basis of export value for such merchandise, it naturally follows that it could not be challenging the fact that an export value for merchandise such as that here involved existed. If the appraisement was, in fact, based upon the existence of export value for such merchandise, as is compatible with the return made by the appraiser and the evidence offered by the defendant as well as the plaintiff, the plaintiff did not have the burden of establishing the material facts as to the existence of export value, but only had the burden of establishing the *amount* of such value.

I make this observation only because of the fact that it would appear to be foreign to the American system of jurisprudence to require the proof of facts not in controversy. I am not unmindful that, in *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C.C.P.A. (Customs) 36, T.D. 43324, our appellate court made an often-quoted observation as follows:

> * * * Accordingly, it is incumbent upon the party who perfected the appeal to meet every material issue involved in the case. If he fails to do so, his appeal is subject to dismissal by the trial court, in which event the appraised value would be in full force and effect. *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 278 [398], T.D. 43120.

And the "material issues" in a reappraisement case are the elements of value as defined by the valuation statute. *Brooks Paper Company* v. *United States, supra*. However, not so frequently quoted from the decision in the *Meadows, Wye & Co. (Inc.) et al.* case, *supra*, is the language which immediately precedes the foregoing quotation, reading as follows:

> Counsel in this case, as in many, seem to be laboring under the erroneous impression that the real issue before the trial court is: Are the values returned by the appraiser the proper dutiable values of the merchandise? That is not the issue in reappraisement cases. We have many times held that the trial by an associate justice of an appeal to reappraisement is *de novo, and that no presumption of correctness attends the decision of the appraiser.* See *Happel & McAvoy (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 161, T.D. 42791, and cases cited. * * * [Italics added.]

Of course, as those familiar with customs jurisprudence know, the law has been changed since the decision in the *Meadows, Wye & Co. (Inc.) et al.* case (1929). There is now a statutory presumption, which I have hereinbefore quoted, which does attend the value returned by the appraiser.

And it has been held that the party appealing for reappraisement of such value may avail himself of the benefit of such presumption insofar as he does not challenge the same. *United States* v. *Fritzsche Bros., Inc.*, and *United States* v. *Schroeder & Tremayne, Inc., et al., supra*.

It would indeed be strange if, merely by keeping silence as to the facts which are put in issue by a plaintiff's appeal for reappraisement, the defendant could prevent the exercise of a right reposing in the plaintiff in connection with the presumption, to the detriment, not only of the party plaintiff, but also of the court in requiring the proof of facts not actually in controversy.

In the present cases, however, I am satisfied that the evidence in the record is sufficient to warrant a finding that the presumption of correctness attending the value found by the appraiser has been overcome, and that the value claimed by the plaintiff has been established.

Two additional factors should be mentioned: First, it satisfactorily appears that the difference between the invoice and entered values is accounted for by the fact that the Tokyo office of the plaintiff added on its invoices to the plaintiff 1 per centum of the price paid to the manufacturer as a bookkeeping device for securing dollar remittances to it to cover the expenses of the office, and that the 1 per centum formed no part of the price or value of the merchandise.

Second, there is conflicting evidence in the record as to whether, at the time of exportation of the involved merchandise, an export license was required in order to export merchandise such as that at bar from Japan. Assuming that such license was required, it does not appear that the requirement was such as would bar a finding that an export value for such merchandise existed. It clearly appears that the existence or issuance of such a license had nothing to do with the offer and sale of merchandise such as that at bar for exportation to the United States. See *F. W. Kuehne Co.* v. *United States*, 12 Cust. Ct. 386, Reap. Dec. 5985, affirmed in *United States* v. *F. W. Kuehne Co.*, 14 Cust. Ct. 356, Reap. Dec. 6110, and *United States* v. *International Commercial Co., Inc., and Armour & Co.*, 28 Cust. Ct. 629, Reap. Dec. 8112.

On the record before me, I find as facts:

(1) That the merchandise involved herein consists of a blend of 37½ per centum first quality, 37½ per centum second quality, and 25 per centum third quality, 4 feet by 8 feet by one-fourth of an inch rotary lauan V-grooved plywood, manufactured and sold by Nakamura Plywood Co. of Nagoya, Japan, and exported from Japan during the latter half of 1956.

(2) That at or about the said time of exportation such or similar merchandise was not freely offered for sale for home consumption in Japan.

(3) That at or about the said time of exportation such merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at $69.56 per thousand square feet, net, packed.

I conclude as matters of law:

(1) That export value, as that value is defined in section 402(d), Tariff Act of 1930, is the proper basis for determining the value of the merchandise here involved, and

(2) That such value in each case is as set forth in finding of fact (3) above.

Judgment will issue accordingly.