(Reap. Dec. 10374)

ZIEL & CO., INC. *v.* UNITED STATES

Entry No. 8112.

(Decided November 21, 1962)

*Lawrence & Tuttle (Edward N. Glad* of counsel) ; *Barnes, Richardson & Colburn (Hadley S. King* of counsel), associate counsel; for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

JOHNSON, Judge: The merchandise involved in the case consists of plywood, exported from Japan in November 1954. At the trial, the appeal for reappraisement was limited to the merchandise described on the invoice as rotary Sen plywood, ¼ inch thick, 4 by 8 feet in size, first quality, type III urea resin glue, unjointed, or up to three joints, manufactured by Yuasa Trading Co., Ltd. Said merchandise was invoiced and appraised as follows:

|  | Invoiced (per 1,000 sq. ft.) net, packed | Appraised (per 1,000 sq. ft.) net, packed |
|---|---|---|
| Sen plywood |  |  |
| unjointed | $125. 00 f.o.b. | $135. 00 |
| up to three joints | 118. 00 f.o.b. | 128. 00 |

It was stipulated, at the trial, that there was no foreign value for such or similar merchandise, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative

Act of 1938. It was agreed that the proper basis of appraisement was the export value, as said value is defined in section 402(d) of said tariff act. Plaintiff claims, however, that said value should be $125 per 1,000 square feet for first quality, unjointed, and $118 per 1,000 square feet for first quality up to three joints, as invoiced.

Robert S. Reid, a trader with Ziel & Co., Inc., the importer herein, testified that he started the plywood department for that firm in 1950 and that his duties include buying and selling plywood and developing a market therefor. He purchased plywood from suppliers in Japan who were manufacturers, such as Yuasa Trading Co., Ltd., and from exporters and trading houses who were not manufacturers. By 1955, he was buying the greatest quantity of Lauan and Sen plywood from Yuasa because its product was fully satisfactory and the firm was dependable.

According to Mr. Reid, Yuasa was not bound by contract to furnish plywood manufactured by it, but it was unusual in 1954 for it to deliver plywood manufactured by someone else. This occurred only when Yuasa could not fill the requirements or was not especially adapted to make the particular type plywood desired. The witness said that when he first began importing, the invoices did not state the name of the manufacturer, but later on they did. As far as he knew, the instant shipment was manufactured by Yuasa.

The witness testified that his firm had no exclusive contract with Yuasa; that there was no agreement, written or oral, preventing it from purchasing from other sources or requiring it to purchase any particular quantity; and there was no agreement that Yuasa would sell plywood to no other firm in the Bay Area. There were occasions when orders to Yuasa were not accepted because the manufacturer did not have sufficient productive capacity.

Mr. Reid stated that his firm made a number of purchases from Yuasa in mid-1954 and that shipments were made from November through the early part of 1955.

A. E. Bryson, manager of import-export for the lumber and plywood department of Balfour Guthrie Co., Ltd., general importer and exporter, testified that his firm imports plywood and sells it throughout the United States. When he set up the plywood importing department in 1953, the company started doing business with three different firms in Japan, among them Yuasa Trading Co., Ltd. Some of the suppliers were general trading houses, but, to the knowledge of the witness, Yuasa was a manufacturer of plywood. He had visited its mill several times and said that it was located about 50 feet from its business office.

In the early part of 1954, according to the witness, Balfour Guthrie purchased Sen plywood of the type here involved from Yuasa. The price was lower than $125 per 1,000 square feet for the unjointed first

quality and was in the neighborhood of $120 or $122 per 1,000. The price for first quality up to three joints was about $7 or $8 less. Before July 1954, the firm had turned to type II glue, which cost about $5 to $7 more per 1,000.

The witness testified that, when his firm first began to import plywood, the crates were opened and inspected at the docks to check the quality. To his knowledge, plywood purchased from Yuasa was stamped with its brand, "TYC," in a diamond.

According to Mr. Bryson, there was no agreement, written or oral, between Yuasa and Balfour Guthrie, giving the latter an exclusive territory in the United States; there was no agreement with Yuasa restricting Balfour Guthrie's sales anywhere; and there was no agreement requiring it to buy a particular quantity from Yuasa. In fact, there were occasions when Yuasa was unable to accept orders from Balfour Guthrie. In 1955, or when the market dropped below the MITI check price, Balfour Guthrie ceased doing business with Yuasa.

There was received in evidence as plaintiff's exhibit 2 an affidavit of Jiro Hatanaka, submanager of the Nagoya office of Yuasa Trading Co., Ltd. According to the affiant, Yuasa is a manufacturer of plywood and other wood products, with plywood and sawmills at Nagoya. The affiant has been with the firm for 25 years and has personal knowledge of the selling prices of the various items of plywood manufactured and sold for export to the United States. He stated that it has been the practice of the company to freely offer and sell to anyone who cared to buy for export to the United States, whether exporters located in Japan, or importers located in the United States. Although a sizable quantity was sold to a few regular customers in the United States, plywood was also sold at the same time to exporters in Japan and other importers in the United States, depending upon the quantity available and the orders received. Prices included packing, freight, and handling charges necessary to placing the goods on board vessels for transportation to the United States and did not vary because of quantity.

According to the affiant, in the last 6 months of 1954, rotary Sen plywood with type III urea resin glue, of the size 48 by 96 inches, in ¼ inch thickness, was offered at $125 per 1,000 square feet for first quality unjointed and $118 per 1,000 square feet for first quality up to three joints. A list of sales at those prices covering merchandise shipped from November 1954 through May 1955 is included in the affidavit. It is stated therein that there was a time lag of 3 or 4 months between date of sale and date of shipment, so that shipments made in the first 4 months of 1955 were the result of sales made during the last 6 months of 1954.

The affidavit states further that merchandise was offered and sold with the definite restriction that it would not be sold for home consumption in Japan but would be exported. It is also stated that prices to Japanese trading houses or exporters located in Japan were lower.

Defendant offered in evidence a report of Lester D. Johnson, appraiser of merchandise, dated March 25, 1955 (defendant's collective exhibit A). Information obtained in an interview with Mr. J. Hatanaka, manager, foreign trade division, Yuasa Trading Co., Inc., is set forth as follows:

Yuasa Trading Company sells directly 95% of their production to three importers in the United States, Ziel & Company of San Francisco, Cal., Balfour, Guthrie & Company, Ltd., Portland, Oregon, and the Wood-Mosaic Corporation of Louisville, Kentucky. The latter concern is their principal customer at the present time. Only five per cent of this firm's production is sold through exporters. It is the present policy of this concern not to offer or sell to others in the same market as their established customers nor will· they knowingly offer or sell to a customer of an exporter with whom they have business relations. To the extent indicated they do not freely offer or sell their merchandise for exportation to the United States. * * *

Defendant's collective exhibit B contains a report and affidavit of Albert J. Francis, Jr., acting regional customs representative, dated August 9, 1961. It is stated therein:

3. Mr. Hatanaka said that Yuasa Trading Co. is the manufacturer, the shipper and the seller of plywood for domestic consumption as well as for export to the United States and to third countries. He said that he has not and does not restrict the sale of his merchandise to any one purchaser or any class of purchaser but sells to American importers as well as Japanese export houses for export to the United States. He said that the only limitations placed on his sales is the capacity of his mill and the export quota set by the Japanese Government for export of plywood to the United States. Mr. Hatanaka said that he does not place a restriction on the Japanese trading houses and that such houses are free to sell the merchandise for export to the United States or any other foreign country.

At the conclusion of the trial, both parties requested time to file briefs, but only the plaintiff has done so. The Government has submitted a statement that it will not file a brief.

A case involving a different type of plywood and a different manufacturer, but circumstances analogous to those here present, was before the court in *National Carloading Corp.* v. *United States*, 43 Cust. Ct. 531, Reap. Dec. 9535, affirmed, *sub nomine United States* v. *National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125. In that case, it was held that "all purchasers," within the meaning of section 402(d), consisted of the exporters or trading houses or American importers who purchased from the manufacturers for export to the

United States; that the restriction that the merchandise must be exported was not a condition which would bar a finding of export value, since export value is concerned with the price at which the merchandise is offered for sale for exportation to the United States; that since the merchandise was offered on an f.o.b. shipping port basis, that is the price for valuation purposes, regardless of where the principal market is located; that the question of usual wholesale quantities was not involved since the price did not vary with the quantity purchased; and that the evidence was sufficient to establish *prima facie* the price at which the merchandise was freely offered to all purchasers.

In the instant case, although it is stated in Mr. Johnson's report that it was not the policy of Yuasa to offer and sell to others in the same market as its established customers or to a customer of an exporter with whom it had business relations, the weight of the evidence establishes that the merchandise was in fact freely offered and sold to all who cared to buy without restriction other than the condition that it be exported and not resold in Japan.

The fact that Yuasa sold to exporters and trading houses in Japan at lower prices does not preclude a finding of export value, since such prices represent discounts to favored classes of purchasers. *United States* v. *Glanson Co.*, 47 CCPA 110, C.A.D. 740.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of rotary Sen plywood, ¼ inch thick, 4 by 8 feet in size, first quality, type 111 urea resin glue, unjointed, or up to three joints, manufactured by Yuasa Trading Co., Ltd., of Nagoya, Japan, and exported in November 1954.

2. That, at or about the time of exportation, such or similar merchandise was not freely offered for sale for home consumption in Japan.

3. That, at or about the time of exportation, such merchandise was freely offered for sale to all purchasers in the principal markets of Japan in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at $125 per 1,000 square feet, net, packed, for first quality, unjointed, and $118 per 1,000 square feet, net, packed, for first quality up to three joints.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise involved herein.

2.  That said value is $125 per 1,000 square feet, net, packed, for first quality, unjointed, and $118 per 1,000 square feet, net, packed, for first quality up to three joints.

Judgment will be rendered accordingly.