(Reap. Dec. 10377)

Pacific Wood Products Company
Railway Express Agency, Inc., et al. } *v.* United States

Entry No. 5990–H, etc.

(Decided November 28, 1962)

*Lawrence & Tuttle (Edward N. Glad* of counsel) ; *Barnes, Richardson & Colburn (Hadley S. King* of counsel), associate counsel; for the plaintiffs.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

JOHNSON, Judge: The merchandise involved in these appeals for reappraisement consists of plywood, exported from Japan in April and June 1956. The appeals were consolidated at the trial and limited to the merchandise described on the invoices as rotary Sen plywood, $\frac{3}{4}$ inch thick, 4 feet by 8 feet, or 4 feet by 7 feet, 70 per centum first quality, 30 per centum second quality, and invoiced as type III urea resin glue.

It was stipulated by counsel for the respective parties that there was no foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, for such or similar merchandise. It was further agreed that the merchandise has been appraised on the basis of export value, as that value is defined in section 402(d) of said tariff act.

According to the official papers, which were received in evidence without being marked, the merchandise was invoiced and appraised as follows:

| Reap. No. | Entry No. | Invoiced (per 1,000 sq. ft.) net, packed | Appraised (per 1,000 sq. ft.) net, packed |
|---|---|---|---|
| 286691–A | 5990–H | $250. 00 | $250. 00 |
| R58/25792 | 28124 | $250. 00 | $265. 00 |
| R58/17133 | 32807 | $250. 00 | $255. 00 |

The invoices indicate that Ishikawa Plywood Co., Ltd., of Nagoya, Japan, was the manufacturer of the imported merchandise.

Plaintiffs agree that export value is the proper basis of appraisement, but claim that said value is $240.79 per 1,000 square feet.

Jack Davidson, executive vice president and coowner of Pacific Wood Products Company, testified that his firm has been importing

plywood from the Orient and Europe and selling it here to distributors and manufacturers since 1954. It maintains branch offices in various cities, including Tokyo. The witness supervises the latter office, visits Japan from time to time, and is familiar with the plywood market there as far as the pricing and selling by Japanese firms is concerned.

According to Mr. Davidson, Japanese plywood began to be exported in the early 1950's and found a ready market in this country. Production increased rapidly and, by 1955, prices began to drop because of an overexpansion of production capacity. A check price system was established in mid-1955 by the Japanese Ministry of International Trade and Industry (MITI) and, when that was not effective in restricting the downward movement in price, a quota system was imposed. Eighty per centum of the available export quota was allotted to members of the Japan Plywood Export Association and 20 per centum was reserved for outsiders. The quota was distributed on the basis of plywood exportations during the base period 1954–55. Pacific Wood Products Company, having been an exporter of record, was assigned a quota. The company also exported on the basis of unused quotas allocated to the manufacturer or to others.

Mr. Davidson stated that when the Tokyo office was first set up, it received offers from Japanese mills, transmitted them to Los Angeles, where they were accepted or rejected, and, if accepted, purchaser orders were sent directly to the mill. By 1955, purchase orders were sent to the Tokyo office, which issued them to the mill. Pacific Wood Products Company thus became the exporter of record, which enabled it to get a quota. The Tokyo office operated as Japanese trading houses did and was able to get prices which included an amount which was later remitted or rebated to the Tokyo office and used to pay overhead. In some instances, the Tokyo office prepared the export documents and, in some cases, the mill did so. The remittances were made, however, whether or not the Tokyo office prepared the documents.

Various order forms were received in evidence, showing a price of $250 per 1,000 square feet (plaintiff's exhibits 3 through 8). According to the witness, letters of credit were issued in that amount. This amount was collected by the manufacturer, Ishikawa, and one-half of 1 per centum was remitted by it to the Tokyo office. The witness admitted, and the exhibits indicate, that there was nothing in the papers which would show that such a remittance had been made by Ishikawa to anyone.

Mr. Davidson testified that his firm did not have any exclusive arrangement with Ishikawa; that he had never heard of Ishikawa refusing to sell to his competitors, or at prices higher or lower than those offered to him. During the period when Ishikawa was selling to Pacific Wood Products Company at $250 per 1,000 square feet, less

one-half of 1 per centum, that was the current price to all his competitors, including American importers and trading houses in Japan. This price dropped to $242 per 1,000 square feet, less one-half of 1 per centum, in March or April 1956. The witness explained that he did not believe that other trading houses were paying more, because his firm was a new company in Japan; it was buying plywood directly, which it was not customary for Americans to do, and it was not performing the functions of trading houses, such as supplying the mills with logs and rendering financial aid.

An affidavit of Juzo Ishikawa, president of Ishikawa Plywood Co., Ltd., was received in evidence as plaintiffs' exhibit 1. It is stated therein that plywood manufactured by the said firm was freely offered to anyone who cared to buy for export to the United States; that the prices included the cost of packing and freight and handling charges necessary to placing the merchandise on vessels for transportation to the United States; that the prices did not vary because of quantity purchased; that plywood of the type here involved was produced only for export from Japan. It is further stated that prices were lowered on April 1, 1956, in order to meet competition, and that, for the remainder of the year, rotary Sen plywood of the size 48 inches by 96 inches in 3/4 inch thickness, consisting of 70 per centum first quality and 30 per centum second quality, with type III urea resin glue, was offered to all who cared to buy for export to the United States at $240.79 per 1,000 square feet. Such merchandise was sold with the definite restriction that it would not be resold for consumption in Japan and would be exported. At that time, it was necessary for an exporter to secure an export quota and license from the Japanese Government, but the seller was not concerned with this regulation as it was the responsibility of the buyer to secure such license.

In an affidavit, received in evidence as plaintiffs' exhibit 2, Peter Okada, vice president of Pacific Wood Products Company in charge of the Far Eastern Division, stated that, in April, May, and June 1956, he was able to purchase rotary Sen plywood of the type here involved from Ishikawa at $240.79 per 1,000 square feet and that, during said 3 months, that was the freely offered price. A list of purchases, including two at said price during April and May 1956, is set forth in the affidavit. The affidavit states further:

That, however, during this period in question, it was the practice of the home office of my firm in Los Angeles to remit 1/2 of one percent on all merchandise purchased by me from Ishikawa Plywood Co., Ltd., in the letter of credit sent to Japan to cover purchases made by me from that firm in Japan for my firm to pay for my office expenses in Japan. Therefore on invoicing these purchases to my home office, against which invoices the letters of credit were sent to Japan, the 1/2 of one percent remittance of the purchase price was always in the invoice prices, being in the nature of a buying commission. Thus the invoices covering the shipments of the above merchandise purchased by me from the above

mill at either $248.75 or $240.79 per thousand square feet showed a price of $250.00 or $242.00 respectively per thousand square feet in order to include within this price the ½ of one percent remittance or buying commission.

Defendant offered in evidence a report of Smith B. Griffin, regional customs representative, together with an affidavit of Shizuo Uehara, office manager of the Tokyo office of Pacific Wood Products Company since June 1958, and copies of purchase orders (defendant's collective exhibit A). These documents corroborate the evidence offered by the plaintiffs that the prices included amounts which were remitted by the manufacturers to the Tokyo office for overhead expenses.

At the close of the trial, both parties requested time to file briefs, but only the plaintiffs have done so. The Government has submitted a statement that it will not file a brief.

The issues in this case are substantially the same as those involved in *National Carloading Corp.* v. *United States*, 43 Cust. Ct. 531, Reap. Dec. 9535, affirmed, *sub nomine United States* v. *National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125, the only difference being that the merchandise was a different type of plywood produced by a different manufacturer. In that case, it was held that "all purchasers," within the meaning of section 402(d), consisted of the exporters or trading houses or American importers who purchased from the manufacturers for export to the United States; that the restriction that the merchandise must be exported was not a condition which would bar a finding of export value, since export value is concerned with the price at which the merchandise is offered for sale for exportation to the United States; that since the merchandise was offered on an f.o.b. shipping port basis, that is the price for valuation purposes, regardless of where the principal market is located; and that the question of usual wholesale quantities was not involved, since the price did not vary with the quantity purchased. It was also held that the quota limitation did not bar a finding of export value, since it had nothing to do with the offer and sale of merchandise for exportation to the United States. As to the so-called remittance, the lower court stated (p. 540):

* * * it satisfactorily appears that the difference between the invoice and entered values is accounted for by the fact that the Tokyo office of the plaintiff added on its invoices to the plaintiff 1 per centum of the price paid to the manufacturer as a bookkeeping device for securing dollar remittances to it to cover the expenses of the office, and that the 1 per centum formed no part of the price or value of the merchandise.

The court concluded that the evidence, consisting of a manufacturer's affidavit, one by Mr. Okada similar to plaintiffs' exhibit 2 herein, and testimony by Mr. Davidson, was sufficient to establish *prima facie* the price at which the merchandise was freely offered to all purchasers.

On the authority of the case cited, and on the record presented here, I find as facts:

1. That the merchandise involved herein consists of a blend of 70 per centum first quality, 30 per centum second quality, rotary Sen plywood, ¾ inch thick, either 4 feet by 8 feet, or 4 feet by 7 feet in size, of type III urea resin glue, manufactured and sold by Ishikawa Plywood Co., Ltd., of Nagoya, Japan, and exported from Japan in April and June 1956.

2. That, at or about the time of exportation, such or similar merchandise was not freely offered for sale for home consumption in Japan.

3. That, at or about the time of exportation, such merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at $240.79 per 1,000 square feet, net, packed.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise involved herein.

2. That said value is $240.79 per 1,000 square feet, net, packed. Judgment will be rendered accordingly.