(R.D. 11677)

THOMAS P. GONZALEZ CORP. *v.* UNITED STATES

Entry No. 50988.

(Decided September 23, 1969)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Brian S. Goldstein,* trial attorney), for the defendant.

WILSON, Judge: The imported merchandise consists of 150 bags of garlic powder of the same type and condition as shown by plaintiff's exhibit 5. This garlic powder was produced and exported by Cia Agricola de Ensenada, S.A. of Ensenada, Baja, California, Mexico (hereinafter Agricola). The commercial and/or Special Customs Invoice included in the entry papers discloses that the shipment contained 7,500 kilos, at the price of $3.12 Mexican pesos per kilo, for a total of $23,400 Mexican pesos and that it was exported on April 6, 1964.

This merchandise was entered at $1,873 U.S. currency, which was arrived at at the rate of exchange of .080056 (note 99 Treas. Dec. 193, T.D. 56141). Plaintiff claims that the proper export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplication Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the invoiced and entered value.

This merchandise was appraised at U.S. $0.363 per pound, net, plus cost of bags invoiced at 180 Mexican pesos and labor (packing) invoiced at 158 Mexican pesos, which items are marked "X" on the Special Customs Invoice. The defendant claims that the appraisement is on the basis of export value, *supra*, and under section 402(f)(4)(D) *infra*, based upon the price of garlic powder produced and sold by Heinz Alimentos, S.A., Mexico, D.F., to United States purchasers.

It was stipulated by counsel, and the court finds, that garlic powder is not included in the final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521. The official documents were received in evidence without marking (R. 47).

The statutory provisions under consideration are the following:

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, reads:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed, ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra*, reads:

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise, * * *.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

\* \* \* \* \* \* \*

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise undergoing appraisement, (ii) like the merchandise undergoing appraisement in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise undergoing appraisement.

(D)   Merchandise which satisfies all the requirements of subdivision (C) except that it was produced by another person.

The plaintiff called two witnesses and introduced 10 documentary exhibits as well as exhibit 5 heretofore referred to, and exhibit 6, a garlic salt salable in the United States market. The defendant offered two documentary exhibits received as "A" and "B". The oral and other evidence will be referred to *infra* as deemed necessary.

Mr. Thomas P. Gonzalez testified that the imported merchandise was a garlic powder manufactured in a crude semi-finished condition from *culls* of fresh garlic. He dealt in garlic and garlic powder yearly since 1932, and handled it in shiploads. He was offered ground garlic powder in burlap bags with a polyethelene liner with total weight per bag of approximately 50 kilos net per bag, by letter dated March 5, 1964, from Agricola, exhibits 1 and 1A. The price is stated as "$3.12 Mexican Currency per kilo F.O.B. Ensenada with American import duties for your account."

Gonzalez responded March 19, 1964, exhibits 2 and 2A acknowledging the letter of March 5, 1964, *supra*, and advising of his interest in the lot of ground garlic at the price of $3.12 per kilo, f.o.b. Ensenada packed in burlap bags with an interior of polyethelene. He therein also inquired as to quantity that can be shipped from Ensenada via boat to San Francisco. Agricola replied on March 24, 1964, exhibits 3 and 3A, advising that it offered "firm 350 bags of 50 kilos net each of GROUND GARLIC FOB ENSENADA FOR IMMEDIATE SHIPMENT." On March 27, 1964, Gonzalez confirmed, exhibits 4 and 4A "purchase of 350 bags of GROUND GARLIC packed in bags of 50 kilos each FOB Ensenada at the price of $3.12 Mexican currency per kilo" and advised that he had made booking for 150 bags by the Daido Steamship Company which arrived once a month, its boat being "Koten Maru" which would arrive on April 11th or 12th, the balance of 200 sacks for the next vessel "Kohom Maru" that will arrive approximately May 8th or 10th. Gonzalez requested Agricola to make all necessary arrangements for these 350 bags to be shipped as indicated and also stated that "Payment will be against invoice and bills of ladings."

The "Summary of Entered Values," Customs Form 6417, part of the entry papers, shows that Ensenada, Mexico, is the port of lading; exportation date is April 6, 1964, for the 150 bags of garlic powder, and arrival of the importing vessel, "Koten Maru," at San Francisco on April 15, 1964.

Gonzalez testified that he had an opportunity between March 5, 1964 (exhibits 1 and 1A) and March 27, 1964 (exhibits 4 and 4A) to go down to Ensenada to see what he was buying and there saw the im-

ported garlic powder being produced from *culls* of fresh garlic. He stated that he knew of only one other manufacturer of garlic powder in Mexico who was located in Salamanca, Guanajuato (R. 35) in April or June 1964. He stated that Mexico was not known as a manufacturer of garlic powder, and only do so "incidentally when there is a surplus of garlics" (R. 37) ; that the exporter herein and that other firm, "do so only when there happens to be a large surplus crop of garlic in Mexico where they have a lot of remaining culls that can be manufactured into garlic powder" (R. 38).

Gonzalez also testified that he had no written or oral understanding with Agricola to limit offers of garlic powder only to him, and that he gave no technical assistance or financial aid to the shipper in question with regard to garlic powder (R. 39, 40).

Miss Celestina Luna, called by plaintiff, testified through an interpreter that for the past 8 or 10 years she had been "office administrator of the Compania Agricola de Ensenada" (the exporter herein) which buys and sell products; that it is a cooperative of agriculture, and is located at Manidero, Baja, California,. jurisdiction of Ensenada, Mexico, and deals in the products which are planted in that region, such as chili, garlic, beans, et cetera, that she supervises the merchandise and selling; that she is familiar with this particular shipment to Gonzalez; that she, in the ordinary course of business, keeps all correspondence, which is a custom; that exhibits 1, 2, 3, and 4 are copies on file in the regular course of business; that she is and was employed by Agricola and that exhibits 1A, 2A, 3A, and 4A are her office copies of the above four exhibits (R. 45–50).

It, therefore, appears from the testimony of Miss Luna and the foregoing exhibits, that they constitute the offers, correspondence, and acceptance between Agricola and Gonzalez, of the offers for the merchandise involved herein.

Miss Luna also testified that she was free to offer to whomever she wanted to, and that collective exhibit 7, consists of three letters, which were kept by her in the regular course of business of Agricola, and represent two offers of the ground garlic "exactly" as that offered to Gonzalez at the same price (R. 52). She acted on the partners direction in sending them (R. 59). Those two letters are in Spanish and are translated in the record at pages 53, 54, and 55. They were written by her and she mailed them (R. 56). She never sent out offers for this particular type of garlic at a higher price than $3.12 Mexican currency per kilo (R. 61).

The letter dated February 15, 1964, is addressed to Comercial de Viveres, S.A., Calle Regina #144, Mexico, D.F., and therein offers "a lot of ground garlic of which we will offer at the price of $3.12 M.N.

[Mexican currency] kilo L.A.B. esta Plaza [f.o.b.]." It states that the garlic is packaged in sacks of yute, burlap sacks with an interior sack of polyethelene with a weight of 50 kilos, net, each. The letter requests an answer by mail, if interested (R. 53, 54). It is signed Agricola by J. J. Ramirez, who was an employee of Agricola (R. 56).

The letter dated February 20, 1964, is addressed to Mr. Gustavo Tarin, Post Office Box 8193, Mexico, Federal District, and is in substantially the same language and contains the same content as the letter dated February 15, 1964, *supra* (R. 54, 55).

A letter dated February 28, 1964, is addressed to Mr. Jesus Ramirez and Agricola by Gustavo Tarin and refers to the letter dated February 20, 1964, *supra*. Tarin states that "we are not interested in acquiring the garlic powder that you offer. In case of future demand for this product, we will let you know" (R. 55).

Although the actual involved merchandise was freely offered to all prospective purchasers, but was eventually purchased by the importer herein does not negate the fact that it was freely offered for sale. In *National Carloading Corp.* v. *United States*, 43 Cust. Ct. 531, R.D. 9535 (1959), affirmed *United States* v. *National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125 (1961), the court, at page 534, stated: "* * * A manufacturer might offer his products to *all* purchasers who cared to buy, and his entire output might be taken by one purchaser, but that fact does not establish that he offered his merchandise *only* to the eventual buyer or that the ordinary course of trade was to offer and sell only to one buyer" (emphasis copied); and at page 535: "* * * the price to be adopted for valuation purposes in such situations is the FOB shipping port price, regardless of where the principal market is located." The shipping port of the imported merchandise is Ensenada, Mexico.

The alleged sales for home consumption in Mexico by the firm of Deshidratadora La Cascada, S.A., of garlic powder "not of very good quality" at higher prices than the price at which the imported merchandise was invoiced, does not establish that the said firm's garlic powder was in fact or law such or similar to the imported garlic powder produced from *culls* of fresh garlic. That firm did not export in 1964. (Note pages 4 and 5 of collective exhibit B.)

The alleged sales for exportation to the United States by Heinz Alimentos, S.A., Mexico, D.F., as shown by exhibits L and M part of collective exhibit B are sales of garlic powder in 300 pound DRUMS and not in 50 pound BAGS as imported. The dates of such exportations are *not* at or about April 6, 1964, and the prices differ. There is no showing of similarity between that merchandise and the merchandise at bar.

Miss Luna also testified that on behalf of Agricola she certified the true value of the imported commodity to the Mexican Customs Authorities (R. 63). The original was delivered to the customs agent. Her files contained the certification that covers this particular entry (R. 64, 65). The certification bears No. 286, the name of the ship "Koten Maru", the numbers AEN 610922-001-001; 150 sacks; the total price of $23,400 pesos as well as the name Agricola. It was received as plaintiff's exhibit 8 (R. 67). The contents of said exhibit conform to the information contained in the official papers in evidence, except that the commercial invoice shows the number as AEN 610922-001. Miss Luna explained that the repetition of "001" in exhibit 8 was a mistake made in typing and that said exhibit was prepared in her presence (R. 66).

Miss Luna further testified that she was present when the partners of Agricola agreed on a selling price of $3.12 (R. 71, 72). All of the garlic was sold to Mr. Gonzalez and it could not be sold at a higher price because of its quality (R. 74).

A photostat of a page of the "General Ledger" of Agricola was produced by Gonzalez and was received in evidence as defendant's exhibit A (R. 89). It contains the following, amongst other items:

1964-May 30, Credit on garlic exported Inv. 1035, posting Ref. 9642, credit $1,772.00.

Gonzalez explained under cross-examination that said exhibit A is a page of the book of accounts receivable of Thomas P. Gonzalez Corporation; that it shows charge debits and credits for the year 1964; that one item, $772.00 [evidently a typing error as $1,772 is shown in exhibit A] is a payment of the invoice relating to the involved shipment of garlic powder; that said entry was made by the bookkeeper, Mr. Pineda; that the book is a regular book of accounts, kept in the ordinary course of business, "Covering such transactions as this?" (R. 85, 86); that 9642 is the bookkeeping voucher from where information is gathered for the entry; that it is a credit to the running account, and definitely was paid by his firm; that the exhibit A, identifies it as being the credit issued to the shipper for the garlic here in question and agrees with the invoice which shows No. 1035 as does exhibit A (R. 84, 88).

Gonzalez also explained the several steps that were taken in the United States after importation of exhibit 5, and stated that Mexico did not have the equipment to do that. It was sold to many United States buyers.

On the evidence offered by plaintiff, it was up to the defendant to come forward with evidence to support its claim under section 402 (f) (4) (D), which of course it failed to do by probative evidence of

alleged sales of garlic powder produced and sold by Heinz Alimentos, S.A., Mexico, D.F., to the United States. Neither by cross-examination of plaintiff's witnesses, nor by documentary exhibits, has the defendant established by any patent or substantial evidence, that the dealings between Agricola and Gonzalez were other than a *bona fide* offer to sell and an offer to purchase and the purchase of the actual involved garlic powder at $3.12 per kilo, Mexican currency as invoiced. (Note commercial invoice and defendant's exhibit A, showing No. 1035 as the involved transaction.)

Nor has the defendant produced evidence to offset the several offers to sell this identical merchandise to other prospective purchasers at the same price of $3.12 per kilo, Mexican currency, and at or about the same time. (Note collective exhibit 7 translated in the record at pages 53, 54 and 55.)

It is apparent on the record that plaintiff has established a *prima facie* case for export value, section 402(b), *supra*, and under section 402(f) (1) (A), (4) (A), *supra*. It was, therefore, not necessary to go to the basis for appraisement, to wit, section 402(f) (4) (D), *supra*.

Accordingly, on the entire record herein, the court makes the following:

### FINDINGS OF FACT

1. That the imported merchandise consists of 150 bags of garlic powder produced from culls of fresh garlic by Cia Agricola de Ensenada, S.A. of Ensenada, Baja, California, Mexico, the exporter. The shipment was exported on April 6, 1964, and contained 7,500 kilos invoiced at $3.12 Mexican pesos, per kilo for a total of $23,400 Mexican pesos.

2. Entry was made at $1,873, United States currency which was arrived at at the rate of exchange of .080056. (Note 99 Treas. Dec. 193, T.D. 56141.) Plaintiff claims that the proper export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the invoiced and entered value.

3. The merchandise was appraised at United States $0.363 per pound, net, plus cost of bags invoiced at 180 Mexican pesos and labor (packing) invoiced at 158 Mexican pesos, which items are marked "X" on the Special Customs Invoice. The defendant claims that the appraisement is on the basis of export value, *supra*, and under section 402(f) (4) (D) of said amended tariff act, based on the price of garlic powder produced and sold by Heinz Alimentos, S.A., Mexico, D.F., to United States purchasers.

4. Plaintiff's oral and documentary evidence clearly establishes that the imported garlic powder was freely offered for sale to all

prospective purchasers at or about the same time and at the same price as invoiced and entered; that the importer purchased the available supply from the exporter consisting of 350 bags of 50 kilos each, of which quantity 150 bags thereof are herein involved.

5. The evidence introduced by the defendant consisting of exhibits A and B, as well as the cross-examination of plaintiff's witnesses, does not negate plaintiff's strong evidence of a *bona fide* agreement to sell and purchase the involved merchandise.

I conclude as matters of law:

1. On the entire record herein, plaintiff has established a *prima facie* case for valuation of the imported merchandise on the basis of export value as defined by section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, at the invoiced and entered value.

2. Evidence introduced by the defendant does not negate the invoiced and entered value.

3. The invoiced and entered value represents the value of the imported merchandise.

Judgment will be entered accordingly.